UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
FRANKFORT

Eastern District of Kentucky
F I L E D
OCT 29 2020
AT LEXINGTON
ROBERT R. CARR
CLERK U.S. DISTRICT COURT

UNITED STATES OF AMERICA

V.  INFORMATION NO. 3:20-CR-15-GFVT

JEREMY DELK and
TAILOR MADE COMPOUNDING LLC

\* \* \* \* \*

**THE UNITED STATES ATTORNEY CHARGES:**

At all relevant times:

### Background

1. **JEREMY DELK** was a resident of the Eastern District of Kentucky.

2. **TAILOR MADE COMPOUNDING LLC ("TMC")** was a Kentucky company formed by **DELK** with its principal place of business in the Eastern District of Kentucky. Located in Nicholasville, Kentucky, **TMC** was at all times subject to the licensure requirements for pharmacies under Kentucky Revised Statutes, Chapter 315. **TMC** received its Kentucky pharmacy license in November 2015. Under Federal law, **TMC** was a 503A compounding pharmacy, as is explained below.

3. The Kentucky Board of Pharmacy, located in Frankfort, Franklin County, in the Eastern District of Kentucky, was statutorily obligated to oversee the implementation of K.R.S. Chapter 315 and to regulate pharmacists, pharmacies, wholesale drug distributors, and others operating in the industries covered by Chapter

315.

4. The Food and Drug Administration ("FDA") of the United States Department of Health and Human Services regulated the manufacture, distribution, and marketing of all drugs shipped or received in interstate commerce through enforcement of the Federal Food, Drug, and Cosmetic Act. 21 U.S.C. § 301, et seq. ("FDCA"). The requirements of the FDCA, in part, were meant to ensure that drugs sold for human use are safe and effective and bear labeling that contains accurate and adequate information.

5. The FDCA defined a "drug" in relevant part, as (1) any article intended for use in the diagnosis, cure, mitigation, treatment or prevention of disease in man or other animal; (2) any article (other than food) intended to affect the structure or any function of the body; or (3) any article used as a component of either. 21 U.S.C. § 321(g).

6. Under the FDCA, a "new drug" was defined as any drug the composition of which is not generally recognized, among experts qualified by scientific training and experience to evaluate the safety and effectiveness of drugs, as safe and effective for use under the conditions prescribed, recommended, or suggested in its labeling. 21 U.S.C. § 321(p). It was a prohibited act for any person to introduce or deliver for introduction or to cause the introduction into interstate commerce any new drug unless it has been the subject of a new drug application approved by FDA. 21 U.S.C. § 331(d), 355(a).

7. Compounding pharmacies that met the conditions of section 503A of the FDCA ("section 503A") qualified for exemption from certain provisions of the FDCA. Those conditions included compliance with current good manufacturing practices (CGMP) (section 501(a)(2)(B)); labeling with adequate directions for use (section

502(f)(1)); FDA approval prior to marketing (section 505); and receipt of valid prescriptions for individually-identified patients. *See* 21 U.S.C. §§ 351(a)(2)(B), 352(f)(1) and 355(a).

8. For a compounded drug product to qualify for exemptions under section 503A, the bulk drug substances used must: (i) comply with the standards of an applicable United States Pharmacopeia (USP) or National Formulary (NF) monograph, if a monograph exists, and the USP chapter on pharmacy compounding; (ii) if such a monograph does not exist, be components of FDA approved drugs; or (iii) if such a monograph does not exist and the drug substance is not a component of an FDA approved drug, it must appear on a list developed by the FDA through regulation ("503A bulks list") (section 503A(b)(1)(A)(i) of the FDCA). Drugs that did not meet these criteria were unapproved new drugs.

9. The FDCA also prohibited any business or person from engaging in the wholesale distribution of prescription drugs unless the business or person had a license from the designated state authority from the state from which the distribution was made and, if the distribution was interstate, also from the designated state authority into which the wholesale distribution was to be delivered. As part of its duties under K.R.S. 315.402, the Kentucky Board of Pharmacy was the designated authority that inspected and licensed wholesale distributors of prescription drugs shipped to and from Kentucky.

10. At no time did TMC apply for or receive a permit, license, or authority from the Kentucky Board of Pharmacy to act as a wholesale distributor of prescription drugs.

11. Selective androgen receptor modulators ("SARMS") were synthetic chemicals designed to mimic the effects of testosterone and other anabolic steroids. Products containing SARMS were often marketed and sold for body-building purposes, to increase muscle mass. FDA issued a public safety alert in 2017 warning consumers about ingesting products containing SARMS because these products had been linked to life-threatening reactions, including liver toxicity, and that these products have the potential to increase the risk of heart attack and stroke. SARMS were an unapproved new drug and did not meet the exemptions under section 503A.

12. Methylcobalamin is a form of vitamin B-12, which the FDA generally recognizes as safe for human consumption, provided it is manufactured and distributed in accordance with relevant state and federal regulations.

## COUNT 1
## 21 U.S.C. §§ 331(t) & 353(e)

13. Paragraphs 1 through 12 are re-alleged and incorporated by reference as if fully set forth herein.

14. Between on or about October 23, 2018, and May 14, 2020, in the Eastern District of Kentucky, and elsewhere,

**JEREMY DELK**

knowingly engaged in wholesale distribution of a prescription drug, namely Methylcobalamin 10mg/ml 10mL, distributing the drug in interstate commerce in violation of Title 21 of United States Code section 353(e), by at no time licensing TMC as a wholesale distributor with the Board of Pharmacy for the Commonwealth of

Kentucky.

All in violation of Title 21, United States Code, Sections 331(t), 353(e), and 333(b)(1)(D).

## COUNT 2
## 21 U.S.C. §§ 331(d) & 355

15. Paragraphs 1 through 11 are re-alleged and incorporated by reference as if fully set forth herein.

16. From in or about October 25, 2018, through on or about April 1, 2020,

**TAILOR MADE COMPOUNDING LLC**

introduced, delivered for introduction, and caused the introduction and delivery for introduction into interstate commerce of quantities of new drugs, including SARMS and other substances, that the FDA had not approved for distribution in the United States, from the Eastern District of Kentucky throughout the United States and elsewhere.

All in violation of Title 21, United States Code, Sections 331(d), 355, and 331(a)(1).

## FORFEITURE ALLEGATION
## 21 U.S.C. § 334
## 28 U.S.C. § 2461

17. Upon conviction of the offense in violation of Title 21, United States Code, Section 331(d) set forth in this Information, the defendant, **TAILOR MADE COMPOUNDING LLC**, shall forfeit to the United States of America the unapproved new drugs that were shipped from the Eastern District of Kentucky to locations throughout the United States, pursuant to Title 21, United States Code, Section 334 and

Title 28, United States Code, Section 2461.

18.   Because the above-described forfeitable property has been transferred and sold to third parties, and cannot be located upon the exercise of due diligence, the United States intends to seek a forfeiture money judgment in the amount of $1,788,906.82, pursuant to Title 21, United States Code, Section 853(p), as incorporated by Title 28, United States Code, Section 2461(c).

*[signature]*

**ROBERT M. DUNCAN, JR.**
**UNITED STATES ATTORNEY**

## INDIVIDUAL PENALTIES

**COUNT 1:** Not more than 10 years imprisonment, $250,000 fine, and 3 years supervised release.

**PLUS:** Mandatory special assessment of $100 per count.

**PLUS:** Restitution, if applicable.

## ORGANIZATION PENALTIES

**COUNT 2:** Not more than 5 years probation, $1,000 fine, and 1 year supervised release.

**PLUS:** Mandatory special assessment of $125 per count.

**PLUS:** Restitution, if applicable.

**PLUS:** Forfeiture as listed.