Eastern District of Kentucky
**FILED**

OCT 29 2020

AT LEXINGTON
ROBERT R. CARR
CLERK U.S. DISTRICT COURT

**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
FRANKFORT**

CRIMINAL ACTION NO. 3:20-CR-15-GFVT

UNITED STATES OF AMERICA             PLAINTIFF

V.             **PLEA AGREEMENT**

JEREMY DELK             DEFENDANT

\* \* \* \* \*

1. Pursuant to Federal Rule of Criminal Procedure 11(c), the Defendant will enter a guilty plea to Count 1 of the Information, charging a violation of 21 U.S.C. § 331(t), unlawful wholesale distribution of prescription drugs.

2. The essential elements of 21 U.S.C. § 331(t) are:

    (a) The defendant engaged in wholesale distribution of a prescription drug;

    (b) The distribution was in interstate commerce;

    (c) The defendant was not licensed by the State from which the drug was distributed; and

    (d) The defendant did so knowingly.

3. As to Count 1 of the Information, the United States could prove the following facts that establish the essential elements of the offense beyond a reasonable doubt, and the Defendant admits these facts:

    (a) Jeremy Delk was the owner and chief executive officer of Tailor Made Compounding, LLC ("TMC"), a compounding pharmacy located in Nicholasville, Kentucky, in the Eastern District of Kentucky, and subject to the provisions of

Kentucky Revised Statutes, Chapter 315 and the Food, Drug, and Cosmetics Act ("FDCA"). The Kentucky Board of Pharmacy, located in Frankfort, Franklin County, in the Eastern District of Kentucky, is statutorily obligated to oversee the implementation of K.R.S. Chapter 315 and to regulate pharmacists, pharmacies, wholesale drug distributors, and others operating in the industries covered by Chapter 315. Following an on-site inspection by the Kentucky Board of Pharmacy, TMC received its Kentucky pharmacy license in November 2015.

(b) The Food, Drug, and Cosmetics Act prohibits any business or person from engaging in the wholesale distribution of prescription drugs unless the business or person has a license from the designated state authority from which the distribution is made and, if the distribution is interstate, also from the designated state authority into which the wholesale distribution is to be delivered. As part of its duties under K.R.S. 315.402, the Kentucky Board of Pharmacy is the designated authority that inspects and licenses wholesale distributors of prescription drugs shipped to and from Kentucky. At no time did TMC apply for or receive a permit, license, or authority from the Kentucky Board of Pharmacy to act as a wholesale distributor of prescription drugs.

(c) Doctor 1 is a licensed physician who operates an anti-aging/wellness clinic in the Greater Los Angeles, California area. His practice focuses on optimized muscular health, optimized physical fitness, and sex drive, among many others. As part of his treatment of patients, Doctor 1 routinely prescribes various peptides and other drugs designed to enhance vitality, physical strength, and sexual performance. Beginning on October 23, 2018, and continuing through May 14, 2020, Doctor 1 ordered Methylcobalamin 10mg/ml 10mL, a prescription form of vitamin B12, from TMC. Rather than sending individualized, patient-specific prescriptions to TMC as is required by law, Doctor 1 made bulk orders of Methylcobalamin 10mg/ml 10mL without issuing prescriptions or providing accurate patient names. TMC filled these orders, totaling 112 vials, without patient specific names on the vials. TMC sold Doctor 1 bulk, wholesale distributions of Methylcobalamin 10mg/ml 10mL that moved in interstate commerce without the issuance of any individualized prescriptions, all in violation of 21 U.S.C. § 331(t). The volumes of Doctor 1's orders were such that the Methylcobalamin he received was far more than a *de minimis* amount for in-office use.

(d) During the time of the Methylcobalamin wholesale distributions to Doctor 1, Jeremy Delk, as owner and chief executive officer of TMC, was aware that TMC had never applied for permission from the Kentucky Board of Pharmacy for TMC to act as a wholesale distributor of prescription drugs. Despite this knowledge, Jeremy Delk knowingly caused TMC to fill and ship bulk, wholesale

2

distributions of Methylcobalamin to Doctor 1. When authorities from the FDA and the Kentucky Board of Pharmacy inspected TMC between August 20 and October 24, 2018, Jeremy Delk took steps to hide records of TMC's wholesale distributions of Methylcobalamin, as well as other records.

4. The statutory punishment for the charge in the Information is imprisonment for not more than 10 years, a fine of not more than $250,000, and a term of supervised release of not more than 3 years. A mandatory special assessment of $100 applies, and the Defendant will pay this assessment to the U.S. District Court Clerk at the time of the entry of the plea.

5. Pursuant to Rule 11(c)(1)(B), the United States and the Defendant recommend the following sentencing guidelines calculations, and they may object to or argue in favor of other calculations. This recommendation does not bind the Court.

    (a) United States Sentencing Guidelines (U.S.S.G.), November 1, 2018, manual, will determine the Defendant's guidelines range.

    (b) Pursuant to U.S.S.G. § 1B1.3, the Defendant's relevant conduct includes the unlawful wholesale distribution of prescription drugs to Doctor 1.

    (c) Pursuant to U.S.S.G. § 2N2.1, the base offense level is 6.

    (d) Pursuant to U.S.S.G. § 3B1.1, increase the offense level by 2 levels for his role in the offense.

    (e) Pursuant to U.S.S.G. § 3C1.1, increase the offense level by 2 levels for obstruction of justice.

    (f) Pursuant to U.S.S.G. § 3E1.1 and unless the Defendant commits another crime, obstructs justice, or violates a court order, decrease the offense level by 2 levels for the Defendant's acceptance of responsibility. If the offense level determined prior to this 2-level decrease is level 16 or greater, the United States will move at sentencing to decrease the offense level by 1 additional level based on the Defendant's timely notice of intent to plead guilty.

(g) Pursuant to U.S.S.G. § 5E1.2, a fine is appropriate.

6. No agreement exists about the Defendant's criminal history category pursuant to U.S.S.G. Chapter 4.

7. The Defendant will not file a motion for a decrease in the offense level based on a mitigating role pursuant to U.S.S.G. § 3B1.2 or a departure motion pursuant to U.S.S.G. Chapter 5, Parts H or K. The Defendant also will not seek a sentence below the advisory sentencing guidelines range as set forth in Paragraph 5.

8. The Defendant waives the right to appeal the guilty plea and conviction. The Defendant waives the right to appeal any determination made by the Court at sentencing with the sole exception that the Defendant may appeal any aspect of the sentence if the length of the term of imprisonment exceeds the advisory sentencing guidelines range as set forth in Paragraph 5. Except for claims of ineffective assistance of counsel, the Defendant also waives the right to attack collaterally the guilty plea, conviction, and sentence.

9. The United States will recommend releasing the Defendant on a personal recognizance bond for future court appearances if the Defendant does not violate the terms of the order setting conditions of release.

10. The Defendant agrees to cooperate fully with the United States Attorney's Office by making a full and complete financial disclosure. Within 30 days of pleading guilty, the Defendant agrees to complete and sign a financial disclosure statement or affidavit disclosing all assets in which the Defendant has any interest or over which the Defendant exercises control, directly or indirectly, including those held by a spouse,

nominee, or other third party, and disclosing any transfer of assets that has taken place within three years preceding the entry of this plea agreement. The Defendant will submit to an examination, which may be taken under oath and may include a polygraph examination. The Defendant will not encumber, transfer, or dispose of any monies, property, or assets under the Defendant's custody or control without written approval from the United States Attorney's Office. If the Defendant is ever incarcerated in connection with this case, the Defendant will participate in the Bureau of Prisons Inmate Financial Responsibility Program, regardless of whether the Court specifically directs participation or imposes a schedule of payments. If the Defendant fails to comply with any of the provisions of this paragraph, the United States, in its discretion, may refrain from moving the Court pursuant to U.S.S.G. § 3E1.1(b) to reduce the offense level by one additional level, and may argue that the Defendant should not receive a two-level reduction for acceptance of responsibility under U.S.S.G. § 3E1.1(a).

11. The Defendant understands and agrees that, pursuant to 18 U.S.C. § 3613, whatever monetary penalties are imposed by the Court will be due and payable immediately and subject to immediate enforcement by the United States. If the Court imposes a schedule of payments, the Defendant agrees that it is merely a minimum schedule of payments and not the only method, nor a limitation on the methods, available to the United States to enforce the judgment. The Defendant waives any requirement for demand of payment on any fine, restitution, or assessment imposed by the Court and agrees that any unpaid obligations will be submitted to the United States Treasury for offset. The

Defendant authorizes the United States to obtain the Defendant's credit reports at any time. The Defendant authorizes the U.S. District Court to release funds posted as security for the Defendant's appearance bond in this case, if any, to be applied to satisfy the Defendant's financial obligations contained in the judgment of the Court.

12. Pursuant to Rule 11(c)(1)(A), the United States will not bring additional charges against the Defendant based upon evidence in its possession at the time of the execution of this Agreement and arising out of the Defendant's conduct within the Eastern District of Kentucky, unless the Defendant breaches this Agreement. If the Defendant violates any part of this Agreement, the United States may void this Agreement and seek an indictment for any violations of federal laws, and the Defendant waives any right to challenge the initiation of additional federal charges.

13. This document and the supplement contain the complete and only Plea Agreement between the United States Attorney for the Eastern District of Kentucky and the Defendant. The United States has not made any other promises to the Defendant.

14. This Agreement does not bind the United States Attorney's Offices in other districts, or any other federal, state, or local prosecuting authorities.

15. The Defendant and the Defendant's attorney acknowledge that the Defendant understands this Agreement, that the Defendant's attorney has fully explained this Agreement to the Defendant, and that the Defendant's entry into this Agreement is voluntary.

ROBERT M. DUNCAN, JR.
UNITED STATES ATTORNEY

Date: 9/16/20         By: *Kate K Smith*

Kate K. Smith
Assistant United States Attorney

Date: 9/9/20          *Jeremy Delk*

Jeremy Delk
Defendant

Date: 9/16/2020       *Kent Wicker* w/permission
                      
Kent Wicker
Attorney for Defendant

**APPROVED**, this _____ day of _____, _____.

_____
UNITED STATES DISTRICT JUDGE

7