1              UNITED STATES DISTRICT COURT
               EASTERN DISTRICT OF KENTUCKY
2              CENTRAL DIVISION - FRANKFORT

3   UNITED STATES OF AMERICA,

4        Plaintiff,
                              Docket No. 3:20-CR-15
5   VS.                      At Lexington, Kentucky
                             Thursday, October 29, 2020
6                            1:42 p.m.
    JEREMY DELK and
7   TAILOR MADE COMPOUNDING, LLC,

8        Defendants.
                          - - -
9      TRANSCRIPT OF REARRAIGNMENT PROCEEDINGS BEFORE
        U.S. DISTRICT JUDGE GREGORY F. VAN TATENHOVE
10                        - - -
    APPEARANCES:
11

12  For the United        KATE K. SMITH
    States:               Assistant United States Attorney
13                        260 West Vine Street
                          Suite 300
14                        Lexington, Kentucky  40507-1612
                          (859) 685-4855

15  For the Defendant     J. KENT WICKER
    Jeremy Delk:          Dressman, Benzinger, LaVelle, PSC
16                        321 West Main Street
                          2100 Waterfront Plaza
17                        Louisville, Kentucky  40202
                          (502) 572-2500
18
    For the Defendant     BRANDON WAYNE MARSHALL
19  Tailor Made           Nash Marshall, PLLC
    Compounding, LLC:     129 West Short Street
20                        Lexington, Kentucky  40507
                          (859) 254-3232
21
    Court Reporter:       SANDRA L. WILDER, RMR, CRR
22                        Official Court Reporter
                          313 John C. Watts Federal Building
23                        330 West Broadway, Suite 327
                          Frankfort, Kentucky  40601
24

25        Proceedings recorded by mechanical stenography,
        transcript produced by computer.

1              [Proceedings commenced at 1:42 p.m. in open

2    court]

3              THE COURT:  Thank you, sir.

4              Good morning -- or good afternoon now, ladies

5    and gentlemen.

6              Madam Clerk, would you call the pending case,

7    please.

8              COURTROOM DEPUTY:  Yes, Your Honor.

9              In the matter of the United States of America

10   versus Jeremy Delk and Tailor Made Compounding, LLC,

11   called for waiver of indictment, filing of

12   information, and arraignment.

13             THE COURT:  Thank you.

14             Counsel, would you state your appearances,

15   please.

16             MS. SMITH:  Good afternoon, Your Honor.  Kate

17   Smith on behalf of the United States.

18             THE COURT:  Ms. Smith, good afternoon to you.

19             MR. WICKER:  Good afternoon, Your Honor.

20   Kent Wicker for Mr. Delk, who is present.

21             THE COURT:  Mr. Wicker.

22             MR. MARSHALL:  Good afternoon, Your Honor.

23   Brandon Marshall on behalf of Tailor Made Compounding,

24   and I also appear as the authorized representative of

25   that company.

1           THE COURT:  Excellent.  Thank you.
2   Mr. Marshall, Mr. Wicker, good to have you in federal
3   court this afternoon.
4           This matter is called on my docket, Mr. Delk,
5   because your attorney has indicated it's your intent
6   to enter a plea this afternoon; is that correct, sir?
7           THE DEFENDANT:  Yes, Your Honor.
8           THE COURT:  All right.  We're going to
9   accomplish three different things with this
10  proceeding.
11          I'm going to ask you a series of questions to
12  make sure you're in the right frame of mind to make
13  such an important decision.  And I'm not trying to
14  embarrass you; they're the same questions that I ask
15  every criminal defendant.
16          Secondly, you have a number of rights,
17  protections that you're going to give up, and I'm
18  going to go over those.  I just want to make sure you
19  know what you give up when you plead guilty versus
20  having the benefit of a jury trial.
21          And then finally, there will be a punishment;
22  there'll be a consequence, and that's about your
23  sentence.
24          This isn't the proceeding in which we'll
25  finally determine your sentence, but I want to talk a

1 little bit about that process and how that decision

2 will be made, and talk about the maximum penalties,

3 and make sure you understand all of those

4 consequences.

5          You can see, it's really important that you

6 understand these proceedings.  So if at any time I say

7 something that's confusing to you, will you ask me to

8 explain myself?

9          THE DEFENDANT:  Yes, Your Honor.

10          THE COURT:  And then you're very ably

11 represented.  Mr. Wicker's very experienced.  And if

12 at any time you need to consult with him during this

13 proceeding, you can do so, and do so confidentially.

14 Any questions?

15          THE DEFENDANT:  No, sir.

16          THE COURT:  All right.  The first thing we

17 need to do is administer an oath.

18          Would you stand where you are, please, and

19 direct your attention to the courtroom deputy.

20          COURTROOM DEPUTY:  Please raise your right

21 hand.

22          [THE DEFENDANT JEREMY STEVEN DELK WAS SWORN]

23          THE COURT:  You can be seated.

24          You're under oath, so I expect that you'll

25 answer my questions truthfully, and I know that you'll

1  do that, Mr. Delk.

2      I do need to form you that you if choose not

3  to, you could face another federal charge of perjury,

4  or making a false statement; is that clear?

5      THE DEFENDANT:  Yes, Your Honor.

6      THE COURT:  There's a right that you have

7  that I talk about at the beginning of the proceeding.

8  It's called the right to remain silent.  You probably

9  heard that phrase before.  It simply means that you're

10 the only person in the courtroom that can provide

11 information that's going to result in a federal felony

12 conviction.  No one can require you to provide it.

13 Your lawyer can't require this.  I can't require it.

14 The government can't require it.  You have an absolute

15 right to remain silent, and then we'll let a jury

16 decide whether you're guilty or not guilty.

17      Do you understand that you are waiving that

18 right if we go forward?

19      THE DEFENDANT:  Yes, Your Honor.

20      THE COURT:  Okay.  Give me your full name.

21 Let's make sure we have it correct for the record.

22      THE DEFENDANT:  It's Jeremy Steven,

23 S-T-E-V-E-N, Delk.

24      THE COURT:  And how old are you, Mr. Delk?

25      THE DEFENDANT:  I'm 40 years old.

```
 1            THE COURT:  And how far did you go in school?
 2            THE DEFENDANT:  Bachelor's in science.
 3            THE COURT:  All right.  I'm interested in
 4   your work history.  And I don't need to know every
 5   job.  I obviously know the last role that you had.
 6   But roughly from the time you left school, to the most
 7   recent work experience, give me a sense of your work
 8   history.
 9            THE DEFENDANT:  After college, I went into
10   finance.  I was an institutional equity trader at
11   Fidelity Investments.
12            I left that job in my early 20s and started a
13   company called Delk Enterprises, which is -- still
14   exists today.  It's primarily -- it was started as a
15   real estate development, and then went into private
16   equity venture capital investing from building
17   materials, manufacturing.  And then moved to
18   healthcare and investing in 2007 and 2008, and more
19   full-time in healthcare investments in 2010, until
20   presently.
21            THE COURT:  Okay.  Are you currently under
22   the care of a physician for any kind of physical
23   condition, high blood pressure or cholesterol,
24   anything like that?
25            THE DEFENDANT:  No, Your Honor.
```

1          THE COURT:  Are you currently under the care

2  of a mental health provider, a psychiatrist,

3  psychologist, social worker?

4          THE DEFENDANT:  I have a therapist I see once

5  every few months.

6          THE COURT:  Let me ask this:  Have you ever

7  been hospitalized or treated for a mental condition?

8          THE DEFENDANT:  No, Your Honor.

9          THE COURT:  Okay.  And have you been

10  diagnosed with any kind of mental condition?

11          THE DEFENDANT:  No, sir.

12          THE COURT:  All right.  Have you ever been

13  treated or hospitalized for an addiction to drugs or

14  alcohol?

15          THE DEFENDANT:  No, Your Honor.

16          THE COURT:  Have you used any alcohol in the

17  last 24 hours?

18          THE DEFENDANT:  I had a glass of wine with

19  dinner last night.

20          THE COURT:  Okay.  Have you used any drugs,

21  legal or otherwise, in the last 24 hours?

22          THE DEFENDANT:  No, Your Honor.

23          THE COURT:  Mr. Wicker, have you had any

24  problems communicating with your client?

25          MR. WICKER:  Not at all, Your Honor.

1          THE COURT:  Ms. Smith, is the government in

2  possession of any information that would suggest that

3  Mr. Delk is not competent to enter a plea this

4  afternoon?

5          MS. SMITH:  No, Your Honor.

6          THE COURT:  Okay.  Well, based on your

7  answers to my questions, confirmed by the lawyers,

8  you, of course, are competent to enter a plea of

9  guilty this afternoon.

10          I want to make sure you got a copy of the

11  information; I'm sure you did, that sets out the

12  charge against you.  And I want to make sure that

13  you've had an opportunity to review that document and

14  talk to your lawyer about that document.  Has that

15  occurred?

16          THE DEFENDANT:  Yes, Your Honor.

17          THE COURT:  Okay.  And have you been

18  satisfied with the advice and counsel and the

19  representation you've received from the lawyers

20  involved in this case?

21          THE DEFENDANT:  Yes, Your Honor.

22          THE COURT:  Now, it's important for you to

23  understand that you have a constitutional right to

24  have your case, present it to a grand jury, who will

25  determine if there's probable cause to return an

1  indictment against you.  It's one of the protections

2  that you have.

3          Now, under the Rules of Criminal Procedure,

4  you can give up that right, and you've done that in

5  this particular case.  You've worked out an agreement

6  with the United States in which the charge against you

7  is being brought by way of an information.

8          I just want to make sure we put on the record

9  your understanding that the only way that the

10 government can proceed by way of an information is if

11 you agree to it.  Do you understand that?

12         THE DEFENDANT:  I do, Your Honor.

13         THE COURT:  And have you talked to your

14 lawyer about the consequence, if any, of waiving your

15 right to proceed by way of indictment?

16         THE DEFENDANT:  Yes, sir, I have.

17         THE COURT:  Okay.  Do you have a written

18 waiver in front of you?

19         MR. WICKER:  We do, Judge.

20         THE DEFENDANT:  Yes.

21         THE COURT:  And if that has not yet been

22 signed, I'd like for you to go ahead and sign in open

23 court, and then we'll have that document tendered to

24 me, please.

25         I've been presented with a waiver of

1 indictment that's been signed by Mr. Delk in my

2 presence, and it's also been co-signed by his attorney

3 Mr. Wicker in my presence.  It appears to be in order.

4         I'm going to sign and date it with today's

5 date, which is the 29th, and we'll direct that it be

6 filed in the record, along with the information, if we

7 have the original information as well.

8         Yes, thank you.  Let's have that tendered as

9 well, please.

10         All right.  We'll direct that that be filed

11 in the record as well.

12         Now, my understanding is that you've worked

13 out a plea agreement with the United States; is that

14 correct?

15         THE DEFENDANT:  Yes, Your Honor.

16         THE COURT:  Okay.  Do you have the original

17 document?  Do you have the original plea agreement?

18         MS. SMITH:  Defense counsel does, Your Honor.

19         THE COURT:  Okay.  Let me have that document

20 tendered to me as well, and then I have some questions

21 I'm going to ask you about it.

22         Thank you.  I've been tendered two documents,

23 one's seven pages, inclusive of the signature page,

24 and the other is our supplement.  We have that

25 prepared with every plea agreement in the Eastern

1  District of Kentucky.

2       And, Mr. Wicker, it looks like on September

3  16, you signed both of these documents.  Is that your

4  original signature, sir?

5       MR. WICKER:  It was signed on my behalf, I

6  believe, Your Honor.

7       THE COURT:  Yes, it does -- with your -- with

8  your permission, yes.

9       MR. WICKER:  Yes, sir.

10      THE COURT:  And then, Mr. Delk, it looked

11 like back on September 9th, that you signed these

12 documents.  I think I'm looking actually at a

13 photocopy of the signatures, but was that your

14 original signature on those documents?

15      THE DEFENDANT:  Yes, Your Honor.

16      THE COURT:  And then the documents I have

17 have not been signed by the United States.

18      MR. MARSHALL:  Judge, I apologize.  I believe

19 that the wrong one got handed your way.

20      THE COURT:  All right.  We'll swap that out

21 then.

22      MS. SMITH:  Your Honor, they were all signed

23 in different places, so there is not, for Mr. Delk's

24 plea agreement, one with live signatures on it.  It's

25 all scanned versions.

```
 1              THE COURT:  All right.  Tryin' to fool me
 2  here.
 3              Again, this is a seven-page document with
 4  Mr. Wicker's original authorized signature on -- dated
 5  September 16th.
 6              And then Mr. Delk has identified his
 7  signature dated on September 9th on both documents.
 8              And then, Ms. Smith, it appears that your
 9  original signature with the date of September 16th is
10  on both of these documents.  Is that your original
11  signature?
12              MS. SMITH:  Yes, Your Honor.
13              THE COURT:  Mr. Delk, did you get a chance to
14  read these documents before you signed them?
15              THE DEFENDANT:  Yes, Your Honor.
16              THE COURT:  And did you understand each of
17  the paragraphs?
18              THE DEFENDANT:  I did.
19              THE COURT:  Okay.  Has anybody made a promise
20  to you that's not included in these documents?
21              THE DEFENDANT:  No, Your Honor.
22              THE COURT:  Has anybody said, if you'll sign
23  them, I'm going to guarantee that you'll get a
24  particular sentence?
25              THE DEFENDANT:  No, Your Honor.
```

1           THE COURT:  Has anybody forced you or coerced
2  you to sign them?
3           THE DEFENDANT:  No, sir.
4           THE COURT:  You signed them under your own
5  free will and volition because you're guilty of the
6  charge you're going to plead guilty to?
7           THE DEFENDANT:  I did, yes, sir.
8           THE COURT:  Okay.  Well, it's important that
9  we're all on the same page as to what's been agreed
10  to, and that the record reflect that that's the case.
11           So I'm going to ask Ms. Smith if she'll
12  summarize each of these paragraphs on the record.
13  She's not going to read them verbatim; she'll just
14  summarize them.
15           I'd like for you to listen carefully, please,
16  because when she's done, I'm going to ask you whether
17  her summary is consistent with your understanding as
18  to what you've agreed to.
19           If you hear something that's confusing or
20  something that doesn't quite seem right, that's fine,
21  we'll stop and then we'll work it out and go forward.
22           Are you with me?
23           THE DEFENDANT:  Yes, sir.
24           THE COURT:  Ms. Smith.
25           MS. SMITH:  Thank you, Your Honor.

1           In paragraph 1, the defendant agrees to plead

2   guilty to Count 1 of the information, charging a

3   violation of unlawful wholesale distribution of

4   prescription drugs in violation of 21 U.S.C., Section,

5   331(t).

6           Paragraph 2 sets forth the essential elements

7   of that offense.

8           In paragraph 3 the parties agree to facts

9   which establish the essential elements that the United

10  States can prove beyond a reasonable doubt, and that

11  the defendant Mr. Delk admits.

12          Paragraph 4 sets forth the statutory

13  punishment to the charge, and notes the application of

14  a mandatory special assessment.

15          Paragraph 5, the parties jointly recommend

16  certain sentencing guideline calculations, which, of

17  course, do not bind the Court.

18          In paragraph 6, the parties note that they

19  have no agreement as to the defendant's Criminal

20  History Category.

21          In paragraph 7, Mr. Delk agrees not to file a

22  motion for a decrease in the offense level based on

23  3B1.2, or file a departure motion under Chapter 5,

24  parts (h) or (k) of the sentencing guidelines.

25          Mr. Delk also agrees not to seek a sentence

below the advisory sentencing guideline range as set forth in paragraph 5.

In paragraph 8, Mr. Delk waives his right to appeal the guilty plea and conviction.  He reserves his right to appeal any determination made by the Court at sentencing.

He waives the right to make a determination the Court makes at sentencing, with the exception of any aspect of the sentence if the length of term of imprisonment exceeds the sentencing guideline calculations the parties recommend in paragraph 5. That didn't make very much sense, but there's a limited -- there's a limited waiver on the sentence.

In paragraph 9, the United States agrees to recommend releasing the defendant on a personal recognizance bond for future court appearances, provided he doesn't violate the terms of order setting his conditions of release.

In paragraphs 10 and 11, Mr. Delk agrees to certain financial disclosures and monetary penalties provisions.

In paragraph 12, the United States agrees not to bring additional charges against Mr. Delk based on the evidence known at the time of execution of this agreement and arising out of his conduct in the

1  Eastern District of Kentucky unless he breaches this

2  agreement.

3            And paragraphs 13, 14 and 15 contain standard

4  terms in Eastern District of Kentucky plea agreements.

5            THE COURT:  Mr. Wicker, I'll begin with you,

6  sir.  Is that summary consistent with your

7  understanding as to what your client has agreed to?

8            MR. WICKER:  Yes, it was, Your Honor.

9            THE COURT:  Most importantly, Mr. Delk, is

10 that consistent with your understanding as to what you

11 agreed to?

12           THE DEFENDANT:  Yes, Your Honor, it is.

13           THE COURT:  Do you understand this is like a

14 contract, and it binds you and it binds the United

15 States, but it does not bind me as the judge; is that

16 clear?

17           THE DEFENDANT:  Yes, Your Honor.

18           THE COURT:  That's particularly important as

19 it relates to sentencing.  Plea agreements always

20 include a lot of information about sentencing, but I'm

21 not bound by it, but you are, and so is the United

22 States.  Any questions about that?

23           THE DEFENDANT:  No, Your Honor.

24           THE COURT:  Let me focus your attention next

25 on what you give up or lose by pleading guilty in the

1  resulting felony conviction.

2          First of all, you lose your civil rights;

3  you're going to lose your right to vote and your right

4  to hold public office, the right to serve as a juror

5  going forward, and the right to possess a firearm ever

6  again, unless those were to be restored at some point.

7  Do you understand that?

8          THE DEFENDANT:  I do, Your Honor.

9          THE COURT:  You also have the rights

10  connected to a speedy trial, and that's the first one.

11  You do not have to wait a long time before we would

12  schedule a trial and decide this matter by way of a

13  jury trial, if you were to choose.

14          And if you're worried that you don't have the

15  funds to go forward fully with the trial and hire a

16  lawyer, if that proved to be the case, the government

17  would provide a lawyer for you.

18          If you're worried that the witnesses that you

19  might need may not want to become involved, in most

20  circumstances, we can require, or compel witnesses to

21  come into court and participate in the administration

22  of justice.

23          Those witnesses, by the way, have to appear

24  live.  They have to come in, look you in the eye when

25  they testify.  Your lawyer gets to ask those witnesses

1  tough questions as a way of getting at the truth,

2  confront those witnesses.

3          And as I mentioned to you at the beginning of

4  the proceeding, you would never have to be called as a

5  witness.  You'd have the absolute right to remain

6  silent.  You could testify if you chose.  But if you

7  chose not to, I would inform the jury that they could

8  not use that fact against you in any way.

9          But here's the most important protection you

10  have, and that is you're presumed innocent.  No

11  defendant has to come into court and prove their

12  innocence.  It's the government's burden, Ms. Smith's

13  burden from the beginning of the trial to the end to

14  prove you guilty beyond a reasonable doubt.  There's

15  only one way the government can do that, and that's to

16  convince 12 jurors unanimously that they've met that

17  burden.  Eleven to one doesn't work.  It has to be

18  unanimous.

19          We make it difficult for the government to

20  the use its police power in a way that could

21  ultimately take somebody's liberty away from them, so

22  we put a lot of protections in place for criminal

23  defendants.

24          The important point of all of this is that

25  obviously, if you go forward in a few minutes, you'll

be convicted by way of a plea, so there's no trial.
So you're not going to benefit from any of those
protections.  Do you understand that?

THE DEFENDANT:  I do, Your Honor, yes, sir.

THE COURT:  Okay.  Any questions about that?

THE DEFENDANT:  No, sir.

THE COURT:  I next want to focus on the
consequence.  And this isn't the proceeding in which
we're going to determine your sentence.

You've spent a lot of time talking to your
counsel about that, you've included some information
in the plea agreement related to that as well, so I
don't want to belabor this, but I do want to make sure
you understand what the maximum penalties are that you
could face, and I want to talk to you a little bit
about the process that we're going to use to make a
decision about your sentence.

You're pleading guilty to one count; it's
unlawful wholesale distribution of prescription drugs.
That violates 21 United States Code, Section 331(t),
and you have a maximum term of incarceration for
pleading guilty to that charge of ten years.

If there were to be a period of incarceration
imposed in this case, it will be followed by a period
of supervised release.  So you'd be released into the

1  community, it would no more than three years, and

2  you'd be -- have your liberty restored to you, but

3  you'd have some rules you have to follow.  Obviously,

4  you can't get in trouble with the law again, and some

5  other conditions that you'd have to follow.  As long

6  as you followed those conditions, then there would be

7  no problem.

8        But the worst case scenario would be that

9  you'd have a problem, you'd violate the conditions,

10  and the consequence could be revocation in your

11  supervision.  You could spend up to another two years

12  incarcerated, with another three years of supervised

13  release after that.

14        Now, I don't expect that will happen.  You

15  don't want that to happen.  I certainly don't want it

16  to happen for you, but I want to make sure that you

17  understand the maximum penalty.

18        I think there's an agreed-to fine in this

19  case; is that correct?

20        MS. SMITH:  The parties agree that a fine is

21  appropriate, but as to the amount, that would be

22  governed by the guidelines.

23        THE COURT:  Okay.  So for the maximum penalty

24  statutorily in this case would be $250,000 in terms of

25  the maximum statutory fine in this particular case.

1  And the guidelines may recommend an amount that's

2  less -- less than that, but that would be the

3  statutory maximum for pleading guilty to that count in

4  this case.

5          And then I don't believe there's an agreement

6  on restitution or that we're not going to -- there's

7  no entity perhaps left to restitute to?

8          MS. SMITH:  That is correct, Your Honor.  I

9  don't think restitution would be applied here.

10         THE COURT:  So typically that will be part of

11 the sentence.

12         The final thing I would say to you is that

13 there is a special assessment of $100 per count, which

14 is non-waivable, and would be part of the sentence in

15 this case.

16         Do you understand those are the maximum

17 penalties that you could face?

18         THE DEFENDANT:  I do, Your Honor, yes, sir.

19         THE COURT:  Do you have any questions?

20         THE DEFENDANT:  I do not.

21         THE COURT:  Okay.  Well, let me focus your

22 attention on just a couple of matters related to

23 sentencing.

24         You know what's going to happen next.  You've

25 going to sit down with the probation office and

1  they're going to gather lots of information and then

2  they're going to prepare a report; it's called a

3  presentence investigation report.  And it has a lot of

4  background information, and -- but one of the --

5  probably the most important document that a judge uses

6  and reads and studies in making a determination about

7  your sentence.

8          Probably most significantly, it's going to

9  have a recommended sentence.  As Mr. Wicker, I'm sure

10 has explained to you, this is not just pulled out of

11 the air.  We're going to look at the crime you

12 committed, the amount of money involved, we're going

13 to look to see if there's any criminal history that

14 we're concerned about, and then that'll result in a

15 recommended period of incarceration perhaps, a

16 recommended fine.  It comes as a range.

17         Before I make a decision about your sentence,

18 you're going to get a copy of that report.  The

19 government gets a copy.  I'll get a copy.  In working

20 with your lawyers, you can decide whether or not

21 there's anything in the report that you think's

22 incorrect.  Maybe it's a date, maybe it's a name, a

23 description.  Or maybe you think the recommended

24 sentence is incorrectly calculated, that it's too

25 harsh, for example.

1          That's fine.  If that happens, your lawyer
2   will file objections.  We'll have a hearing, and I'll
3   rule on those objections.  I might agree; I might
4   disagree.  The important thing today is we can't know
5   how that will turn out.
6          So it's very common for you to have worked
7   with your lawyers to try to anticipate what the
8   sentence will be.  But if we get to sentencing and the
9   recommended sentence turns out to be higher than you
10  think it is, you'll be disappointed, but the law
11  doesn't allow me to let you change your mind.  So you
12  cannot come to me at that point and say, Judge, I now
13  want to have a trial.  This is higher than I thought
14  it would be.  Is that clear?
15         THE DEFENDANT:  Yes, Your Honor.
16         THE COURT:  That recommended sentence is also
17  exactly as I've described it during this proceeding;
18  it's a recommendation.
19         And so I could decide to sentence you below
20  what's being recommended, but I could decide to
21  sentence you above what's being recommended, as long
22  as it didn't go over the statutory maximums.
23         And if it was higher than what's being
24  recommended, again, you would be disappointed, but
25  that is not a reason under the law that I could allow

1 you to change your mind, and then have a jury trial.

2 Do you understand that?

3          THE DEFENDANT:  I do, Your Honor.

4          THE COURT:  Do you understand there's no

5 parole in the federal system?

6          THE DEFENDANT:  I do, Your Honor.

7          THE COURT:  All right.  Just to be clear,

8 what that means is that whatever sentence I were to

9 impose, if there's an incarcerated sentence in this

10 case, that you'll have to serve the majority of that

11 sentence.  State courts have parole.  Sometimes you'd

12 serve a little bit and not have to serve the rest.

13 We've abolished that many years ago in the federal

14 system.

15          Any question about sentencing?

16          THE DEFENDANT:  No, Your Honor.

17          THE COURT:  Okay.  Well, let me draw your

18 attention to one part of your plea agreement.  And as

19 Ms. Smith pointed out, it's a little confusing, so I

20 want to make sure that we have all of our questions

21 answered.

22          It's paragraph 8.  So one of the protections

23 you have, Mr. Delk, is that certain decisions that get

24 made by me in this court that you disagree with, you

25 can ask another group of three judges to take a second

1  look at it.  And you can see how that protects you,

2  and that's, of course, called an appeal.

3          As part of your agreement, as part of the

4  contract, you've given up, though, some of your appeal

5  rights, in essence, promised under certain

6  circumstances I'm not going to appeal, and you've

7  retained other appeal rights.  I just want to make

8  sure you had a chance to talk to Mr. Wicker about

9  paragraph 8.

10          THE DEFENDANT:  I did.

11          THE COURT:  And did he explain to you the

12  consequence of waiving the appeal rights as described

13  in paragraph 8?

14          THE DEFENDANT:  Yes, Your Honor, he did.

15          THE COURT:  Mr. Wicker, do you think your

16  client understands the consequence of waiving those

17  appeal rights?

18          MR. WICKER:  He does, Your Honor.

19          THE COURT:  Well, based on your responses to

20  my questions, Mr. Delk, confirmed by your attorney, I

21  do find that the waiver of appeal as set out in

22  paragraph 8 is knowing, and it's voluntary, and I do

23  think you understand the consequence in waiving those

24  appeal rights.

25          One final piece of business that I need to

1 conduct before I accept your plea.  And that is, I

2 need to be confident that you understand the conduct

3 that you engaged in that's criminal conduct, and you

4 admit to it.

5       If you've come in here today, you don't feel

6 like you've done anything wrong, but you're just

7 trying to plead guilty to get it over with, I can't

8 let you go forward.

9       So I want to first of all, have Ms. Smith put

10 on the record the elements of this count that you're

11 pleading guilty to, and then I'll have some follow-up

12 questions about that.  And then I'll have a question

13 about the plea agreement.

14       But before we're done, I'll want to just hear

15 in your own words what it is you did, okay?

16       THE DEFENDANT:  Yes, Your Honor.

17       THE COURT:  Ms. Smith.

18       MS. SMITH:  Thank you, Your Honor.

19       As agreed to between the parties, the

20 elements of 21 U.S.C., Section 331(t) are one, the

21 defendant engaged in wholesale distribution of a

22 prescription drug.

23       Two, that distribution was in interstate

24 commerce.

25       Three, the defendant was not licensed by the

1  state from which the drug was distributed.

2          And four, the defendant did so knowingly.

3          THE COURT:  Mr. Delk, assume with me that we

4  went to trial.  The government put on their proof,

5  they called their witnesses, they put into evidence

6  documents.  Do you think they could have proven each

7  of those elements beyond a reasonable doubt?

8          THE DEFENDANT:  Yes, Your Honor.

9          THE COURT:  If you'll look at the copy of

10 your plea agreement that you have in front of you, I

11 want to draw your attention to paragraph 3, which

12 begins on the first page, and then goes over to page

13 3.  It's all of page 2, page 3, it's single-spaced

14 paragraphs (a) through (d).  Those are the facts that

15 this plea agreement is based on.

16          When you signed the plea agreement, did you

17 do so because to the best of your knowledge, those

18 facts are true?

19          THE DEFENDANT:  Yes, Your Honor.

20          THE COURT:  Put all the legal language aside.

21 What did you do?

22          THE DEFENDANT:  So I was, at the time, the

23 CEO of Tailor Made Compounding, which is a compounding

24 pharmacy that makes medications on a patient's script.

25 We are what's -- we were called what's a 503A, which

1  means it can dispense medications on a patient's
2  specific script -- prescription form a doctor, so from
3  Dr. X to Mr. Wicker, it has to be an individual.  And
4  in not receiving that patient-specific script, if you
5  were to dispense and send out medications in bulk, you
6  know, 10 vials or 20 vials, you would be required to
7  have a wholesale distribution license in this state,
8  as well as the state it was shipped to.
9          I'm here to take responsibility for that.  I
10 didn't have that -- those licenses, didn't obtain
11 those licenses, and did so knowingly.
12         THE COURT:  All right.  Ms. Smith, do you
13 think there's a satisfactory factual basis to accept a
14 plea from the defendant?
15         MS. SMITH:  Yes, Your Honor.
16         THE COURT:  Mr. Wicker, do you agree?
17         MR. WICKER:  I do, Judge.
18         THE COURT:  Mr. Delk, would you stand,
19 please.
20         How do you plead as to Count 1 as set forth
21 in the information; do you plead guilty or not guilty?
22         THE DEFENDANT:  I plead guilty, Your Honor.
23         THE COURT:  You can be seated.
24         Mr. Marshall, would you stand, please.
25 You're here as the corporate representative?

1          MR. MARSHALL:  I am, Your Honor.

2          THE COURT:  You're the attorney for the

3     corporation.  Under the rules --

4          MR. MARSHALL:  I am, sir.

5          THE COURT:  -- the attorney can enter a plea

6     on behalf of the corporation which is pleading guilty,

7     as I understand it, to a misdemeanor charge.

8          How does the corporation plead as to Count 2

9     that was set forth in the information; does the

10    corporation plead guilty or not guilty?

11         MR. MARSHALL:  Judge, the corporation pleads

12    guilty, consistent with the corporate resolutions and

13    other matters that if I could, I would tender to the

14    Court.

15         THE COURT:  If you would, please, let me take

16    a look at these, and then we can have those filed in

17    the record.

18         MR. MARSHALL:  Thank you, Your Honor.

19         THE COURT:  Mr. Marshall, it looks like

20    earlier today you signed this plea agreement that was

21    worked out with the United States?

22         MR. MARSHALL:  Yes, sir.

23         THE COURT:  Is that your original signature?

24         MR. MARSHALL:  It is, Your Honor.

25         THE COURT:  And then it appears --

```
 1          MR. MARSHALL:  It's Mr. Delk's signature on
 2  the corporate resolution.
 3          THE COURT:  That is Mr. Delk's signature --
 4          MR. MARSHALL:  Yes.
 5          THE COURT:  -- on the corporate resolution.
 6  But what about -- and that -- that's your signature on
 7  behalf of Tailor Made Compounding as well?
 8          MR. MARSHALL:  It is, Your Honor.
 9          THE COURT:  Okay.  And then, Ms. Smith,
10  you've signed both of these documents.  Is that your
11  original signature --
12          MS. SMITH:  Yes, sir.
13          THE COURT:  -- with today's date, correct?
14          MS. SMITH:  Yes, Your Honor.
15          THE COURT:  Okay.  Okay.  You can be seated.
16          I think these documents are in order.
17          Consequently, I'm satisfied with the
18  responses that have been given to me by the defendant.
19  And I'm satisfied with the documents and the plea that
20  has been entered on behalf of the corporation in this
21  case.
22          Accordingly, it's the finding of this Court
23  that in the case of United States of America versus
24  Jeremy Delk and Tailor Made Compounding, LLC, as I
25  say, I think the defendant Mr. Delk is competent and
```

1  capable of entering an informed plea.  I think the

2  plea of guilty is knowing and voluntary.  It's

3  supported by an independent basis in fact that

4  contains the essential elements of the crime charged.

5        I'm going to accept the plea by Mr. Delk, and

6  I'm going to accept the plea on behalf of the

7  corporation and adjudge both defendants guilty of the

8  offenses charged against each of them, Count 1 of the

9  information with regard to Mr. Delk, and Count 2 of

10  the information with regard to the corporate

11  defendant.

12        We'll have these plea agreements, of course,

13  filed in the record.

14        I would like to set this matter for

15  sentencing, and hereby set it for Wednesday, February

16  24, 2021, next year.  We'll do it at 11:00.

17        Our hope is to be able to do that in

18  Frankfort, as opposed to Lexington, so we'll hold that

19  proceeding there.

20        We'll direct the probation office, of course,

21  to prepare presentence investigation reports in this

22  case.

23        Encourage you, Mr. Delk, to cooperate; I know

24  you'll do that.  Make sure your lawyers are a part of

25  that process.  It's really important to make sure that

1  I have the best information to make a fair decision

2  about your sentence.

3          Have you understood these proceedings?

4          THE DEFENDANT:  I have, yes, sir.  Thank you,

5  Your Honor.

6          THE COURT:  Do you have any questions at

7  all --

8          THE DEFENDANT:  I do not.

9          THE COURT:  -- about what's occurred here

10  today?

11          THE DEFENDANT:  I do not.  Thank you, Your

12  Honor.

13          THE COURT:  Okay.  Now, I understand there's

14  been some preliminary discussions with the probation

15  office in terms of conditions of release.  The

16  government's agreed not to oppose release until

17  sentencing in this case.

18          The only question seems to be related to

19  travel.  So let me hear from you, Mr. Wicker.

20          MR. WICKER:  Yes.  Thank you, Judge.

21          As you know from seeing the bond report,

22  Mr. Delk has no prior criminal record.  He has

23  substantial ties to Kentucky.  He was born -- born and

24  raised here.  He owns a home in Nicholasville.  He has

25  children who are here in Kentucky.  And under the plea

1 agreement, the offense level is lower than many that

2 you've seen on a routine basis.

3        Mr. Delk, though, has a need to travel at

4 times on business.  And between now and the sentencing

5 date, he has three business trips that he would need

6 to take, and he also has a trip that he'd like to take

7 with his -- with his children to on a short vacation.

8        I think under the circumstances that it would

9 be appropriate for the Court to require Mr. Delk to

10 consult and give notice to probation when he's going

11 to take a trip and tell them where he's going to be,

12 what he's going to be doing, but not to require

13 advance permission of probation or the Court if he's

14 traveling within the United States.

15        THE COURT:  So to be clear, he's willing to

16 give up his passport?

17        MR. WICKER:  We have one -- one additional

18 trip that we'd like to ask permission to take to the

19 British Virgin Islands.  But other than that trip,

20 yes, he would be willing, of course, to give up his

21 passport and --

22        THE COURT:  And that's the vacation -- that's

23 the family vacation?

24        MR. WICKER:  That would be -- Mr. Delk has

25 property in the BVIs.  But because of the COVID

1 pandemic, he's not been able to check on his property

2 in a year or more, so he'd like to take a short trip

3 to check on his property then.

4          And then in February, he has a trip, short

5 trip to Disney that he's planning.

6          THE COURT:  But that's within the continental

7 United States.

8          MR. WICKER:  That's within -- for the

9 family -- within the United States.

10          THE COURT:  Okay.  Ms. Smith, what do you

11 think?

12          MS. SMITH:  Your Honor, I'd defer to

13 probation and the Court.  I don't have a strong

14 objection to any of the proposed procedures for this

15 or the proposed travel.

16          THE COURT:  Well, why don't we do this.  I've

17 got conditions, which I think you reviewed.  I do not

18 have the passport condition.  And if the government --

19 I mean, this does seem to me to be a case in which I

20 don't think we have -- we've got strong ties to the

21 community.  We don't have a concern about you fleeing

22 the jurisdiction.  And so I don't know that there's a

23 necessity to surrender your passport.  If we had you

24 to do that, it would just complicate the matters as it

25 relates to the trip to the BVIs, so I'm not going to

1   impose that.

2          But we typically would confine you to the

3   Eastern District of Kentucky.  I do think we could

4   give the probation office flexibility, though, to

5   allow for business trips, and the trip you've

6   identified to Orlando.

7          And why don't I -- why don't we maybe ask the

8   probation officer to give -- recommend the best

9   language to kind of accomplish that to make sure

10  you've got good guidance, and let's go ahead and kind

11  of work that out before we ...

12         PROBATION OFFICER CARDIN:  Yes, sir.

13  Regarding the -- regarding the passport, surrendering

14  the passport, my understanding is that that condition

15  is not going to be imposed, correct?

16         THE COURT:  Correct, that's correct.

17         PROBATION OFFICER CARDIN:  Yes, sir.  And

18  then that second part of the language, perhaps after

19  the part where it says, "confined to the Eastern

20  District of Kentucky," perhaps maybe something along

21  the lines of, "or within the United States as directed

22  by the U.S. Probation," perhaps, sir, if that sounds

23  appropriate.  Or perhaps, "As directed by the U.S.

24  Probation."  That might be shorter, sir.

25         THE COURT:  Okay.  What if we provide a

1  little bit of guideline on this and just simply say

2  that the travel is restricted to the confines of the

3  Eastern District of Kentucky, or as directed by the

4  United States Probation Office regarding business

5  travel and one trip related to a family vacation?

6          Mr. Wicker?

7          MR. WICKER:  Judge, I think that's generally

8  workable.  I know that there is a pending sale of his

9  company that he's going to be working on, and some of

10  the counsel -- or some of the people involved in the

11  deal are at Louisville, so could we expand that to

12  both districts in Kentucky?

13          THE COURT:  I don't think there'd be a

14  problem with that.

15          Ms. Smith, do you have any problem?

16          MS. SMITH:  No, Your Honor, no objection.

17          THE COURT:  And then with regard to the more

18  specific language, any objection to that?

19          MS. SMITH:  No, Your Honor.

20          THE COURT:  Okay.  I'm just going to make

21  these handwritten changes, and then we'll finalize

22  this.

23          Okay.  I'm going to order that the defendant

24  be released on conditions.  I've signed and dated that

25  order with today's date.  I have made one handwritten

1 change and initialed that change consistent with my

2 ruling here on the bench with regard to travel.

3          So there may be a little processing that we

4 need to do before we allow you to leave today, but

5 otherwise, you'll be released on these conditions.

6          Ms. Smith, is there anything else that I need

7 to address on behalf of the United States?

8          MS. SMITH:  No, Your Honor.

9          THE COURT:  Mr. Wicker, anything else on

10 behalf of your client?

11          MR. WICKER:  No, Your Honor.  Thank you.

12          THE COURT:  Mr. Marshall, anything I can do

13 on behalf of the corporate client here?

14          MR. MARSHALL:  Judge, just briefly.

15          I wanted to put on the record the agreement

16 with the company and the United States calls for a

17 significant forfeiture payment.  And I wanted the

18 Court to be aware that today prior to the hearing I

19 tendered a check for $800,000 representing the first

20 of two tranches.  We represent to the Court that we

21 anticipate making the final payment on the forfeiture

22 prior to sentencing.

23          THE COURT:  Okay.  Excellent.  Thank you for

24 making that part of the record today.

25          The next time I see you, sir, will be after

 1  the new year, and we'll conduct the sentencing in this

 2  case.  But as I say, you'll be released under the

 3  current conditions.

 4          Thank you, counsel, for your representation.

 5          We'll stand adjourned for the day.

 6          THE DEFENDANT:  Thank you, Your Honor.

 7          [END OF PROCEEDINGS – 2:27 p.m.]

 8                        *  *  *  *  *

 9          I, SANDRA L. WILDER, RMR, CRR, certify that

10  the foregoing is a correct transcript from the record

11  of proceedings in the above–entitled matter.

12

13  /s/ Sandra L. Wilder RMR, CRR      Date of Certification:
    Official Court Reporter            April 8, 2021

14

15

16

17

18

19

20

21

22

23

24

25

SANDRA L. WILDER, RMR, CRR, OFFICIAL COURT REPORTER
310 South Main Street, Suite 317, London, Kentucky  40745
(859) 516-4114