<pre>
 1                   UNITED STATES DISTRICT COURT
                     EASTERN DISTRICT OF KENTUCKY
 2                   CENTRAL DIVISION – FRANKFORT

 3   UNITED STATES OF AMERICA,

 4         Plaintiff,
                                    Docket No. 3:20-CR-15
 5   VS.                            At Lexington, Kentucky
                                    Wednesday, February 24, 2021
 6                                  11:08 a.m.
     JEREMY DELK and
 7   TAILOR MADE COMPOUNDING, LLC,

 8         Defendants.
                               – – –
 9         TRANSCRIPT OF SENTENCING PROCEEDINGS BEFORE
           U.S. DISTRICT JUDGE GREGORY F. VAN TATENHOVE
10                             – – –
     APPEARANCES:
11
     For the United       KATE K. SMITH
12   States:              Assistant United States Attorney
                          260 West Vine Street
13                        Suite 300
                          Lexington, Kentucky  40507–1612
14                        (859) 685–4855

15   For the Defendant    WILLIAM H. BRAMMELL, JR.
     Jeremy Delk:         Dressman, Benzinger, LaVelle, PSC
16                        321 West Main Street
                          2100 Waterfront Plaza
17                        Louisville, Kentucky  40202
                          (502) 572–2500
18
     For the Defendant    BRANDON WAYNE MARSHALL
19   Tailor Made          Nash Marshall, PLLC
     Compounding, LLC:    129 West Short Street
20                        Lexington, Kentucky  40507
                          (859) 254–3232
21
     Court Reporter:      SANDRA L. WILDER, RMR, CRR
22                        Official Court Reporter
                          313 John C. Watts Federal Building
23                        330 West Broadway, Suite 327
                          Frankfort, Kentucky  40601
24
           Proceedings recorded by mechanical stenography,
25     transcript produced by computer.
</pre>

1          [*Proceedings commenced at 11:08 a.m. in open*
2    *court*]
3          THE COURT:  Thank you, sir.
4          Good morning, ladies and gentlemen.
5          Madam Clerk, would you call the pending case,
6    please.
7          COURTROOM DEPUTY:  Yes, Your Honor.
8          Frankfort Criminal Action 20-CR-15, United
9    States of America versus Jeremy Delk and Tailor Made
10   Compounding, this matter being called for sentencing,
11   Your Honor.
12         THE COURT:  Thank you.
13         Counsel, state your appearances, please.
14         MS. SMITH:  Good morning, Your Honor.  Kate
15   Smith on behalf of the United States.
16         THE COURT:  Ms. Smith, nice to see you.
17         MR. BRAMMELL:  Good afternoon, Your Honor --
18   Bill -- or, morning -- Bill Brammell, on behalf of the
19   defendant Jeremy Delk, who's present with me.
20         THE COURT:  Mr. Brammell, nice to see you,
21   sir.
22         Mr. Delk.
23         MR. MARSHALL:  Good morning, Your Honor.
24   Brandon Marshall, standing here as counsel and
25   authorized representative for Tailor Made Compounding.

1            THE COURT:  Thank you, Mr. Marshall.  Glad to

2    have you in federal court this morning as well.

3            This matter is on my docket to impose a

4    sentence on the two defendants in this particular

5    case.

6            And, Mr. Delk, you'll recall that when you

7    decided to plead guilty, we directed the United States

8    Probation Office to prepare a presentence

9    investigation report.  I just want to make sure you

10    got a copy of that document, and you had an

11    opportunity to read it, to sit down with your lawyers,

12    and get all your questions answered.  Did that occur,

13    sir?

14            THE DEFENDANT:  It did, Your Honor, yes.

15            THE COURT:  Okay.  And then I'm sure that

16    you've received a copy of that on behalf of the

17    corporation, Mr. Marshall.  Just let's make sure

18    that's part of the record, and make sure that you

19    don't have any objections to any of the information

20    that's contained in it.

21            MR. MARSHALL:  We have received it, there's

22    no objections.  And if I could, our compliments to the

23    probation office.  I know those corporate reports are

24    never easy, and it was an excellent report.

25            THE COURT:  Thank you.

1          Well, it's not a common report in most
2    circumstances.
3          Well, Ms. Smith, I know the government would
4    have received a copy of that report.  Do you have any
5    objections to bring to the attention of the Court?
6          MS. SMITH:  No, Your Honor.
7          THE COURT:  All right.  And then,
8    Mr. Brammell, do you have any objections to raise on
9    behalf of your client?
10          MR. BRAMMELL:  No, Your Honor.
11          THE COURT:  I'm going to adopt and accept the
12    findings that are contained in both of those reports.
13          I'm going to specifically find that the
14    recommended sentences in those reports were correctly
15    calculated.  And then we'll file those in the record,
16    but those are filed under seal.  They often contain
17    personal information.  We don't make that public.
18          In the event of an appeal, then those judges
19    and lawyers and parties, of course, would have access
20    to it, but otherwise, it's not publicly available.
21          Let me see if there are any motions that we
22    need to review.
23          MS. SMITH:  No, Your Honor.
24          THE COURT:  I don't think there are.
25          So any time a judge makes a decision about a

1  sentence, he or she considers seven different factors.

2  And I'm going to let the government address those

3  factors on behalf of each defendant in turn.  And then

4  we'll allow the lawyers to address those factors on

5  behalf of each defendant.

6          But the final word always goes to the

7  defendant.  So you have a right to make any kind of

8  statement you want, Mr. Delk, provide any kind of

9  information you want from me.  I'm pleased to give you

10 as much time as you would like today.

11         You're not required to.  You don't get points

12 taken off if you choose not to say anything, but it's

13 a right that you have that I respect, and we'll give

14 you as much time as you like.

15         Do you understand how we're going to proceed?

16         THE DEFENDANT:  I do, Your Honor, yes, sir.

17         THE COURT:  Okay.  The other things that are

18 in the record are sentencing memoranda that have been

19 filed in the record.  I've read and considered that,

20 counsel, so be aware of that.

21         And then there are a number of letters on

22 your behalf, Mr. Delk, that have been filed and made

23 part of the record.  My practice is to put 'em in the

24 record, and my practice is to read them, and I've done

25 that as well.

1          So first of all, though, Ms. Smith.

2          MS. SMITH:  Thank you, Your Honor.

3          I'd like to start talking about the offense

4   itself here.  And I know Your Honor's not afraid of an

5   academic point, so I'd like to start just briefly

6   talking about the Food, Drug and Cosmetic Act.  This

7   is my first Food, Drug, Cosmetic Act in front of Your

8   Honor.

9          And the system we have in the United States

10  is designed to be a closed system, a perfectly closed

11  system.  And the reason it's designed that way is that

12  so when consumers go to the pharmacy, pick up a

13  prescription, when they buy a bottle of Tylenol off

14  the shelf, they know it's safe.

15         It's an unusual system the way the United

16  States has implemented it, and it imposes, in order to

17  accomplish that goal, great burdens on the people who

18  choose to enter this field.  And it does that because

19  those are the people who are in the best position to

20  know what's going into the substances, and to ensure

21  that they are safe.

22         So you have this very high standard that

23  people operating in an FDA-regulated field that's

24  imposed on them.  And that is not your average context

25  that a crime would occur in, that you have this, you

1 know, very high standard you're holding people to who

2 choose to operate in this space.

3      Now, the corporate entity here, Tailor Made

4 Compounding, operated in an explicit loophole to that

5 perfectly closed system as a 503A compounding

6 pharmacy.  And the reason that loophole exists is that

7 so that if a consumer is allergic to an ingredient

8 that is commonly found in the FDA-approved version, a

9 pharmacy can make them a version that is safe for

10 them.  They can make a patient-specific product that

11 doesn't have the offending characteristics of what

12 standard drug might be available to them through

13 traditional channels.  So we've created this loophole

14 so that consumers needs can still be met, and can be

15 met safely.

16      Again, safety for all consumers in the

17 country is what the goal is here.

18      Now, the company was set up in that loophole,

19 but they operated illegally.  They started

20 distributing unapproved FDA drugs; that's what the

21 company has pled guilty to.

22      So you've got a business that is set up in a

23 lawfully permitted loophole, but doing conduct that

24 does not fit in that loophole.  They clearly take it

25 outside of that loophole in what they're permitted to

1  do.

2        Second, you've got Mr. Delk himself, who set

3  up the business operating in this way.  And what he

4  has pled guilty to is operating a wholesale facility,

5  selling drugs in wholesale quantities, which again,

6  would take you out of the 503A loophole context.

7        If he had registered as a wholesale seller of

8  these drugs, even for legal drugs, that would have

9  triggered enormous alarms.

10       So you've got two different ways in which the

11 Food, Drug and Cosmetic Act are being violated.  And I

12 mention that in that distinction because it -- it --

13 it's why this is a criminal case.  It's using a

14 business, using employees, making a lot of money, both

15 selling unapproved drugs, and selling approved drugs

16 in ways that are not authorized.

17       The seriousness of this is why we're here, is

18 why I'm taking a few minutes to -- to talk about this

19 statutory framework.  Because a compounding pharmacy

20 is permitted to operate in this loophole regulatory

21 framework.  And for the FDA and for federal law

22 enforcement to catch this is quite difficult.  For us

23 to get to the point that we can execute a search

24 warrant at a functioning compounding pharmacy is not

25 that common.  And it's why the sentence here needs to

1   reflect the seriousness of the offense, and in

2   particular, to how seriously we take violations of

3   this Act, how seriously we take this intentional

4   effort to undermine the safety of our system, and the

5   regulatory framework that is set up to protect people.

6          I do, of course, any time I'm here under an

7   information, credit Mr. Delk with pleading guilty,

8   with doing that without going the route of indictment,

9   without, you know, frankly what would have been

10  another few years of investigation and significant

11  government resources.

12         The fact that we're here at sentencing a year

13  after executing that search warrant, sentencing both

14  the company and the person running that company is

15  significant, and I think he rightfully gets credit for

16  that in the presentence report.

17         And really don't -- you know, the lack of

18  criminal history on behalf of Mr. Delk is already

19  reflected in his sentencing guidelines, but is

20  certainly to his credit.

21         And then the company agreeing to forfeiture

22  of the sales from 2019, of the $1.7 million.  Again, a

23  huge credit to Mr. Delk and the company for saying

24  what we're doing is wrong, and wanting to move forward

25  from that.  But none of those things alter how serious

1 the effect of this conduct is.

2          And now, you know, to address the defendants

3 separately as to what the United States thinks under

4 3553 would be an appropriate sentence, I'll first

5 address Mr. Delk.

6          And, you know, he is sentenced here for the

7 failing to register with the State Board of Pharmacy

8 in this wholesale production of legal substances.

9          And, you know, when you read the statute, or

10 when you read the information, it reads as kind of a

11 technical regulatory offense.  And I think what

12 counters that is that when you look at the Act as a

13 whole, most of the offenses, misbranding offenses,

14 selling unapproved new drugs have a three-year

15 statutory cap.  But for this conduct, Congress said,

16 You have a ten-year statutory cap.

17          Now, the guidelines are not anywhere near

18 that, of course, but I think that that can tell this

19 Court how significant the conduct violating this

20 statute is.  That it is treated differently than

21 simply selling an unapproved new drug, that

22 distributing as a wholesaler is a meaningful,

23 problematic conduct, that this is a criminal statute

24 with a ten-year statutory max, that this is different

25 than just a run-of-the-mill Food, Drug, Cosmetic Act

1  case.

2      And I mention that because the guidelines are

3  very low, you know.  And I'm not disputing the

4  guideline range, that it's zero to six months, and

5  he's an eight, you know, that he's accepted

6  responsibility for that, but I do think it is an

7  indicator of how serious this is, and that sentence

8  under this statute needs to reflect that.

9      THE COURT:  So is the seriousness focused in

10 this case on -- on we have a regulatory framework,

11 it's really important that everyone follow this

12 framework, and this was kind of blatantly ignored in

13 this case on two levels?

14     Or is this a specific seriousness that

15 relates to the harm caused by these drugs in addition?

16     So the -- you gotta follow the rules is a

17 given, and that's a serious crime; there's no question

18 about it.  But is this -- are these drugs then because

19 the rules weren't followed, harming people?

20     MS. SMITH:  I think it's both.  So what

21 Mr. Delk has pleaded guilty to involves a substance

22 that is a legal substance.  And so his conduct is

23 focused on the manner in which it was being sold, that

24 a compounding pharmacy should not be selling a hundred

25 vials of this drug to a doctor because that's not what

1  they're not signed up to do.  That conduct is

2  explicitly outside of what they're permitted to do,

3  and therein the harm is to the system is that --

4          THE COURT:  This is kind of an aside, but I

5  saw the doctor referenced, a doctor, Doctor 1, I think

6  referenced in the presentence report.

7          Is there a separate prosecution going on in

8  California as it relates to that doctor; are you

9  aware?

10          MS. SMITH:  A criminal prosecution?

11          THE COURT:  Yes.

12          MS. SMITH:  Not to my knowledge.

13          THE COURT:  Okay.

14          MS. SMITH:  Not to my knowledge.  That

15  conduct on the part of the doctor is also not legal.

16          THE COURT:  Right.

17          MS. SMITH:  But, you know, the Act imposes

18  the obligation on the entity either producing or

19  selling or distributing the drug.  That's where the

20  Food, Drug, Cosmetic Act focuses.

21          A doctor can also violate it.  But if the

22  doctor's not the one producing it, the obligation is

23  not the same.

24          THE COURT:  Right.

25          MS. SMITH:  And whether there are regulatory

1   side effects for that physician, I couldn't share with

2   the Court at this time, but there ...

3            THE COURT:  You can't prescribe an unapproved

4   new drug if you're a doctor?

5            MS. SMITH:  Right.  Right -- well, and the

6   doctor -- excuse me -- the drug at issue with that

7   particular doctor, according to the pleadings in the

8   case, is a substance that is approved.

9            The substances for the company, yes, some of

10  them are dangerous.  There is a reason those are not

11  approved FDA substances.  There is a reason it was a

12  problem that the company was selling huge quantities

13  of these two physicians.

14           So, you know, there is a long list of drugs,

15  and we focused in the pleading on the SARMs category

16  of drugs and why those are problematic.  But there are

17  -- there's a reason why each of those substances is

18  there, there's a reason why each of those substances

19  is clearly not an approved substance.  So kind of

20  different harms, depending on the -- on the conduct

21  and the charging instrument, if that makes sense.

22           THE COURT:  Yes.

23           MS. SMITH:  Does that answer your question?

24           THE COURT:  Yep.

25           MS. SMITH:  So just to -- to wrap it up with

1  my -- by my big picture argument here.  Obviously, my

2  focus is on the sentence reflecting the seriousness of

3  the offense.

4         I think here, general deterrence is also a

5  huge factor.  Any time a compounding pharmacy or

6  someone who runs a compounding pharmacy is sentenced,

7  that can send a message to the entire industry of what

8  the cost is for operating, you know, outside of this

9  framework.

10        So for Mr. Delk in specific for the charge

11  that he's pleading to, you know, noting and not

12  disputing the history and characteristics of Mr. Delk

13  and his, you know, letters from family, the thing that

14  did -- you know, and I don't dispute that he's been a

15  leader and created this business that generated a lot

16  of jobs in the area.  But when the business itself is

17  violating the law, and he's employing people and

18  having them in their daily job violate the law, it

19  kind of discounts the value of that.  And I know he's

20  got letters from his employees.

21        And the risk there is, you know, the Food,

22  Drug and Cosmetic Act, the regularly misbranding count

23  is a strict liability offense.  So any individual who

24  is engaged in this conduct, whether they know it's

25  wrong or not, can be charged with a misdemeanor.

1        And so to have a business that is not in its

2   entirety operating illegally; they were selling some

3   drugs that they were permitted to sell, but to set up

4   a business and then exploit that entity and exploit

5   this organization of the people working for it to do

6   something that's illegal, I think makes the offense

7   worse and should also be taken into account.  And I

8   think the Court can, as the owner of the business who

9   set it up.

10       I think there are a number of factors that

11  are not necessary to take into account, particularly

12  providing the defendant with educational or vocational

13  training or medical care.

14       You know, while I don't think Mr. Delk is

15  going to -- we know he's not going to continue to

16  operate a compounding pharmacy.  But, you know, I

17  think the sentence can reflect the fact that pleading

18  guilty to a felony is not just the cost of doing

19  business when wanting to operate sort of in this

20  aggressive illegal way.

21       Given that the guideline range is zero to six

22  months, and the sentencing guidelines, you know,

23  saying that probation is likely the correct outcome

24  for the Court to consider under these factors, you

25  know, I think incarceration would be appropriate and

1  completely supported by the facts.

2          Given that probation is more likely on the
3  table, I would ask that one of the conditions of it be
4  a period of home incarceration, that there be some
5  curtailing of his liberty as a consequence for this
6  offense.

7          You know, it's not a huge heroin case, it's
8  not, you know, murder-for-hire, but something like
9  home incarceration does still have meaning for a
10 businessman.  And so would ask that that be a part of
11 the sentence if probation is part of it.

12         I would also ask that the term of probation
13 be of a meaningful length, that it be longer than a
14 year.  You can go up to five years.  I would ask for
15 three, four, five years so that there is significant
16 supervision and involvement by probation.

17         I'd also ask that a condition be not to work
18 in an FDA-regulated field, and that probation -- I
19 know typically, we include language about monitoring
20 new lines of credit, but would ask that that be
21 expanded, that any new business ventures or business
22 ownership changes in terms of its assets or employment
23 be disclosed to probation.

24         I would also ask that a fine, a maximum fine
25 be imposed on Mr. Delk, which I think is more than

1 supported by the 3553 factors.

2          As for the company, I know it's always very
3 tricky how you analyze these factors for a
4 corporation, and I understand that the company, the
5 assets of the company are on the verge of being sold,
6 so the defendant, as it exists, Tailor Made
7 Compounding will functionally cease to exist.

8          I'm in a kind of a tricky spot.  Because to
9 the extent it is still going to exist, I think that
10 there should be supervised probation for the corporate
11 entity.  I think it would not be terribly burdensome
12 for probation to work with the FDA regulatory folks to
13 visit the business and ensure they're not selling all
14 of the substances in the plea agreement.

15          I understand that sale is about -- it's going
16 to go through next week, so I don't have an elegant
17 solution for that.

18          I mean, I think if the judgment imposes
19 probation with those conditions, it'll be an issue for
20 the next six days.  And then if the sale goes through,
21 there won't be anyone to supervise 'cause the entity
22 won't exist.  So would advocate for that, but I don't
23 know if there's some more elegant solution in how you
24 sentence a company that's likely going to cease to
25 exist.

1           THE COURT:  Thank you, Ms. Smith.

2           MS. SMITH:  And just the last thing.

3           THE COURT:  Sure.

4           MS. SMITH:  I think the forfeiture has

5   satisfied all the financial elements for sentencing

6   the defendant.

7           THE COURT:  Okay.  Thank you.  Thank you.

8           MS. SMITH:  Thank you, Your Honor.

9           THE COURT:  Well, Mr. Brammell?

10          MR. BRAMMELL:  Good morning, Your Honor.

11          You know, this is a -- this is an unusual

12  case, I guess, where there aren't objections to the

13  PSR, and it seems like all the parties and probation

14  agree with the appropriate guideline range being in

15  Zone A., zero to six months.

16          So in light of that, I don't want to repeat a

17  lot of what's already been said and put in the record,

18  but I do want to make a few points on behalf of

19  Mr. Delk.

20          First of all, as the prosecution referenced,

21  he did accept responsibility early in this case.  He

22  presented on an information, and he should receive

23  credit for accepting responsibility.

24          So we would ask that you sentence him within

25  that guideline range.  And I'm not asking for the

1  absolute bottom of that guideline range.

2        We would agree with the government that a
3  period of home incarceration is appropriate in this
4  case.  I don't think it needs to be a full six months.
5  But we're not disputing that home incarceration would
6  be an appropriate penalty.

7        So that would be appropriate for a number of
8  reasons in this case.  One is the strength of
9  Mr. Delk's character.

10       As I know the Court reads all the letters of
11 support, as it can see in those letters, and see
12 through his history, and as it's seen in this
13 proceeding, by him accepting responsibility early, he
14 does have a strong character, and he's often helped
15 those in need without any expectation of repayment or
16 recognition.

17       He's the father of two young children, one of
18 whom's having a birthday today actually.  So they're
19 two and seven.  And while neither one of them are old
20 enough at this point to understand the seriousness of
21 these proceedings, it's his hope that when they're
22 older, they'll look at what he did and the example
23 that he set and the way that he accepted
24 responsibility, and it'll be a teaching lesson for
25 them.

1          He's sold his company.  He's cut ties with it
2   in that way by selling it at an arm's length
3   transaction.  He's also relinquished voluntarily his
4   pharmacy credential that he had.
5          And he has no criminal history, and is very,
6   very unlikely to ever reoffend.
7          On top of the fact of his good character and
8   that he's no longer an owner of this company, he's
9   also caused his company -- and I don't think this
10  is -- this can't be overlooked -- he's caused his
11  company to pay back 1.7 -- nearly $1.8 million in
12  forfeiture.  And I do think he deserves some credit
13  for coming clean and for causing that repayment.
14         In terms of the seriousness of the offense, I
15  don't want to do anything to discredit how serious it
16  is; this a federal felony.  There aren't any federal
17  felonies that aren't serious.  They come with real
18  repercussions, including the fact that he will be a
19  felon.  He'll lose all the rights that -- or many of
20  the rights that come with that status.
21         He's voluntarily relinquished his
22  credentials.  He's agreed to pay the 1.7 or $1.8
23  million in forfeiture.  I think these are all indicia
24  of how serious he's taking this offense.
25         On top of that, in terms of future

1  deterrence, after his period of -- we hope when home

2  incarceration is over, a period of probation is

3  appropriate.  We don't believe that it needs to be

4  five years, probably something more in the middle.

5          You know, another deterrent here is this is

6  his first federal felony.  He has no criminal history.

7  If this ever happens again, I think Mr. Delk

8  appreciates the seriousness of having a criminal

9  history in the federal system.

10          So there are deterrents out there just in

11  being a felon and in knowing the consequences and the

12  severity of the consequences if you come and get a

13  second strike in the federal system.  So I think that

14  should be taken into account, too.

15          He's been completely compliant on pretrial

16  release.  He hasn't had any issues in terms of obeying

17  the guidelines that the Court set.

18          In light of that, once -- if the Court is

19  inclined to grant him home incarceration, when that's

20  over, we expect that his financial commitments will

21  have been fully paid to the government.  If the Court

22  imposes a fine today, which I think a guideline fine

23  would be appropriate, he intends to pay that fine

24  immediately.

25          Traditionally, to continue the financial

reporting as a condition of probation is triggered if they're not meeting their payment schedule.  As a result -- or as, you know, he's going to have all of his obligations already paid.  We don't believe that there needs to be continued financial reporting during that period of probation.

On top of that, Mr. Delk is involved in other business ventures across the country, some outside of the country.  We would ask that if -- or when he's in that period of probation, that the Court consider a condition that allows him to keep the probation office apprised of his travels, but not limit his travels to the Eastern District.  Just as an administrative -- some administrative ease, he travels a lot for business, and that has worked so far while he's been on pretrial release.

Just one moment, Your Honor.

THE COURT:  While you're doing that, Ms. Smith, does the government have a view about the travel restriction, whether the flexibility that the defendant's asking for --

MS. SMITH:  Not for --

THE COURT:  -- would you be objecting?

MS. SMITH:  -- not for routine in-country travel.  You know, I think he's given up his passport,

1   so -- or he's not given up his passport, but think for

2   the period of probation that I'd defer to probation on

3   whether international travel would be appropriate.

4          THE COURT:  Okay.  And are you asking for

5   international travel during the period of probation?

6          MR. BRAMMELL:  I mean, yes, Your Honor, on a

7   limited basis, I think that would be appropriate.  And

8   we could certainly inform the probation office of when

9   that would happen.  I think it would be limited.  But

10  some of his business interests are outside of the

11  country, and they do require international travel.

12         THE COURT:  And has he given the probation

13  office his passport, or has he retained his passport?

14         MR. BRAMMELL:  I believe he's retained it

15  throughout the period of probation.

16         MR. MARSHALL:  Judge, the Court may recall,

17  there was some discussion about an investment property

18  Mr. Delk has outside the country, and there were

19  arrangements made that if he needed to make a trip

20  there, the Court, I believe, blessed that at the time

21  of the plea, which is why he has a passport.

22         THE COURT:  Is that investment property or

23  vacation property?

24         THE DEFENDANT:  Both.  I mean, we rent it out

25  to subsidize the cost of income.

1      MR. BRAMMELL:  Your Honor, the only other

2  point I would make is during a period of probation,

3  there was a suggestion made that there be some

4  condition that would limit his ability to invest in

5  other interests.

6      He doesn't have any -- he's not going to

7  continue to operate a business like the one here, but

8  he does have rental properties, he has relationships

9  in that way.  So I would just want to make sure that

10 whatever conditions of probation that we craft are not

11 overly stringent so as to prevent him from having

12 those existing relationships that he already has and

13 the existing businesses that are already in place.

14      THE COURT:  Typically the restrictions that

15 we focus on are reporting restrictions.  In terms of a

16 prohibition, it'd be a prohibition in a business that

17 deals with the distribution of prescription drugs, for

18 example, and obviously, you're not in a position to

19 engage in that.

20      So what -- what we'll try to do in the

21 context of the conditions is there will be some

22 reporting required.  It doesn't necessarily -- there

23 will be a prohibition as it relates to a very specific

24 kind of business interest going forward over the next

25 period of years, but we also want the probation office

1 to have a good picture of what's going on for that

2 period of time as well.

3          MR. BRAMMELL:  Your Honor, I don't think I

4 have anything else to say, but Mr. Delk would like to

5 speak to the Court.

6          THE COURT:  We'll turn to you in a moment,

7 sir.

8          Let me ask Mr. Brown if you would -- what

9 would be the typical travel condition in this case

10 that would be in place?

11          PROBATION OFFICER BROWN:  Your Honor,

12 typically with someone like Mr. Delk, we would usually

13 recommend that he notifies the probation office of

14 where he wants to go, for what purpose.  And then if

15 we seem that it may be a problem, we would petition

16 the Court and let the Court know.

17          Typically, if it's -- if we can tell that

18 it's for business purposes, we usually don't have a

19 problem with that, Your Honor.

20          THE COURT:  Okay.  Thank you.

21          Thank you, Mr. Brammell.

22          Mr. Marshall, I'm going to turn to you next,

23 and, of course, we'll give you a chance to speak, too,

24 Mr. Delk.

25          MR. MARSHALL:  Thank you, Judge.  I'm sure

1 Your Honor will breathe a deep sigh of relief when I

2 say I'm going to be brief because that's not always my

3 penchant.

4           THE COURT:  It's not always the case even

5 after you say that, Mr. Marshall, so --

6           MR. MARSHALL:  That's correct.  That's

7 correct.

8           THE COURT:  -- so I'm not relieved yet.

9           MR. MARSHALL:  In fact, in my first trial

10 before Your Honor, I think I argued Rule 29 for about

11 two hours when we had a video of the entire offense,

12 but --

13           THE COURT:  But here's what you know, you

14 always have as much time as you like.

15           MR. MARSHALL:  Well, thank you for that.  I

16 appreciate your patience as always.

17           Judge, you know, I and my law firm and a

18 couple of our young associates here today, and they

19 can attest to it even in their early careers, it -- a

20 lot of our clients are carte blanche.

21           I stand here on behalf of a corporation.  But

22 that doesn't mean I don't have something to say

23 because I've really appreciated and enjoyed working

24 for this company and getting to know its owner.

25           It's not every day in a case that promises to

drag on for two or three years with document
productions and discovery and fights about this and
that, that the owner of a corporation or an LLC, in
this case, comes to counsel and says, Hey, we've been
out of bounds.  Let's -- let's be minimal.

          And I think Ms. Smith would attest, it wasn't
but maybe five to six weeks into our engagement when I
was making a call to her saying, What do you gotta
have?  How do we face this?

          And it's been my pleasure to represent a
company with that kind of leadership and guidance.
And I think with an ownership that has refocused
itself.

          A couple weeks ago, I needed to speak to
Mr. Delk for an update on the sale of his company
because I was going to be filing sentencing memorandum
and needed some hard answers about whether or not the
assets were going to be sold.

          And while I was talking to Mr. Delk, I could
hear shuffling and rumbling in the background.  And
our call lasted a good while, probably 30 to 45
minutes.  And along the way, I sort of stopped him and
said, What'd you just do?  What was I hearing?  And he
said, My little boy forgot one of his gloves, and the
teacher called and said he couldn't go out to recess

1 without an extra glove.  And I've been talking to you

2 on the one end and the school on the other.

3        I think that says something about -- and

4 maybe helps the Court understand that this company in

5 the moments after the agent showed up began a shift of

6 priority and focus, and it's going to culminate on

7 March 3rd now, I'm told, in the sale of all its

8 assets.  We have said to the United States we're out

9 of the space, as they say.  We're out of this

10 industry.  The company intends to move off into

11 nothingness.  Its owner, as I understand it, intends

12 to move off into other endeavors and away from the

13 compounding pharmacy space.  It's a phrase I've

14 learned to pick up when I heard Ms. Smith say it

15 earlier.  Apparently in this industry it's the space

16 you worked in.

17        So what I ask the Court for in light of the

18 extraordinary forfeiture that's been paid expediently,

19 in light of the rapid, full acceptance of

20 responsibility on behalf of the company, I ask your

21 Honor to impose a sentence that we requested in the

22 sentencing memorandum, namely a $1,000 fine, the

23 forfeiture that's already been imposed and paid, and a

24 term of probation that would transition at the Court's

25 discretion once the asset sale is complete on March

1   3rd.

2          Having seen over the years some of the other

3   examples of the probation office's efforts to

4   supervise a corporation, it's an endeavor for an

5   operation, and frankly, it is not funded to really

6   dive in.  I know when the Shalashes' warehouse empire

7   was prosecuted, and it was very hard to supervise the

8   manner and means in which equipment and property came

9   in and out of the warehouse.

10          Here fortunately, there's going to be nothin'

11   left to supervise after March 3rd.  And so we would

12   ask the Court if it needs to go ahead and make it

13   supervised for now, with a switch factored into the

14   written judgment that says, Upon proof of the sale of

15   the company's assets provided to probation, the

16   supervision would then essentially die and return with

17   continue unsupervised.  I will say --

18          THE COURT:  Doesn't it die by operation

19   anyway?  I mean, if the corporation doesn't exist,

20   then --

21          MR. MARSHALL:  Yes.  I do not oppose

22   supervised probation for a company that really doesn't

23   exist, except on paper.

24          I just know from my own probation officer hat

25   on what a hassle it becomes to document that you're

1  actually supervising something that doesn't exist.
2  And I'm trying to save my friends there a little
3  hassle.
4        But if the Court feels better with supervised
5  probation, obviously, we will not object to that.  I
6  just think it makes some sense under our unique
7  circumstances.
8        Unless the Court has other questions, again,
9  I'm going to try to be very brief, and really don't
10 think I have anything else to add.
11             THE COURT:  Okay.
12             MR. MARSHALL:  Thank you.
13             THE COURT:  Well, Mr. Delk, let me hear from
14 you, please.
15             THE DEFENDANT:  Thank you, Your Honor.
16        First, you know, I'm sorry that we're here;
17 I'm sorry and accountable for -- for the actions, and
18 I can assure you, Your Honor will never see myself in
19 your courtroom again.
20        I think this is -- I just turned 40 last
21 year -- it was a big year for multiple reasons.  And I
22 think the -- the amount of perspective that this has
23 kind of given me has -- I just really had changed
24 quite a bit, besides causing the company be sold and
25 kind of doing that, it -- it has brought to the light

1  of what's important and what -- what matters, you

2  know.  I mean, I'm -- and besides accepting

3  responsibility for what's happened, I mean, I'm really

4  kind of looking through and taking actions on

5  everything that I own right now, and anything I've

6  invested in, and how can I, you know, do triple

7  checks, and, you know, because we have other

8  investments that are in the healthcare industry, and

9  hiring different regulatory specialists, and at large,

10 just to audit everything.  I'm trying to -- am

11 spending more time with my kids and trying to be more

12 from a board level.  And, I mean, I told Mr. Marshall

13 multiple times that I'm probably all done.  I think

14 after these things kind of play itself out, I've had a

15 good run.  And the level of sphere and I guess

16 absoluteness of this whole deal has kind of caused me

17 to close some areas.

18          So I just want to say I'm here -- I'm sorry.

19 I'm here to accept the sentence you provide, and, you

20 know, assure Your Honor, you'll -- you'll never see me

21 again.

22          THE COURT:  Okay.  Thank you, Mr. Delk.

23          MR. DELK:  Thank you.

24          THE COURT:  You can be seated.

25          Well, I want to begin by talking about the

1  statutory factors that I'm required to consider any
2  time I impose a sentence, and there's seven of them.
3  Some of them, as the government's pointed out, aren't
4  really applicable in the case like this, but several
5  of them are, and I want to kind of give you the
6  reasoning related to those factors that undergirds the
7  sentence that I'm going to impose in this case.
8         I'll say preliminarily that I suspect you
9  never thought you'd be here on a day like today, did
10  you, Mr. Delk?  You've worked hard, you've been a
11  successful business person, you have acquired many of
12  the accoutrements of success in terms of your cars and
13  your homes and the things that one adds as they are
14  increasingly successful.
15         And I suppose it's probably fair to say that
16  the reason you're here ultimately is greed, and that
17  in some fundamental level, that desire to continue to
18  acquire got in the way of your desire to do it the
19  right way.
20         And I understand there's some other factors
21  about your employees and about building a business,
22  and providing a business for them.  But you're going
23  to be able to go forward, and you're going to be able
24  to put this behind you, and you're going to be able to
25  continue to be involved in business interests, and

perhaps build a new business some day, and I don't
doubt you're going to be successful.

        But part of what we want and hope for you is
that you're successful as a person, and it's going to
require some really deep soul-searching.  It's going
to require you to come to terms with the fact that you
made the choices that you did.

        Now, nobody wants to be judged on their worst
day.  This is probably one of your worst days; I
understand that.  And so we as judges take into
account lots of different things when we make a
decision about a sentence.  And I sometimes -- I teach
sentencing, and I tell those students that my job in
large measure is reading biographies, and they're
called presentence reports.  And we get a lot of
information about individuals.  I learn a lot through
sentencing memoranda.  I learn a lot listening to you
today, reading the letters of people who care about
you, people who've worked with you, people that are
related to you.  And all of that goes into making the
decision today.

        I'm required under the law to look at the
recommendation that's in front of me, and it's a
sentence that certainly probation is one of the
primary options.  There's an incarceration component

1  to it; it's very modest in federal court.  That
2  doesn't feel modest, I'm sure, to you as a defendant
3  to contemplate up to six months in federal prison.
4  But there also is a period -- if there were to be a
5  period of traditional incarceration, of supervision
6  that could be imposed in this case.
7       And then the fine range is very applicable in
8  this case.  It's $2,000 on the low end, and $20,000 on
9  the high end.
10      It's kind of where I begin.  Your lawyers
11 have explained to you the complex formulas we use to
12 kind of create those recommendations.
13      There are a number of policy statements that
14 are a part of a sentencing scheme.  I certainly always
15 consider those, to the extent that they're applicable.
16      But then that brings me to the third factor.
17 Sentencing needs to accomplish a number of different
18 public policy goals, if you will.  One of them is it
19 ought to reflect the seriousness of the crime.  And I
20 think the government's done a really good job of
21 articulating why this is -- this is serious.  I mean,
22 we are kind of as a nation in the midst of watching
23 the regulatory process in a way that is just critical
24 to us as a country, and recognizing the importance of
25 it.  And everybody wants a vaccine, and we want it

quick.  But you can imagine if the rules aren't
followed and the protocols aren't followed and the
guidelines aren't followed, the disastrous result that
could happen if it's not done right.

So it is serious to not do it right, to
engage in the wholesale distribution of drugs that you
don't have a license to distribute in that manner, to
be distributing drugs that are not FDA-approved
obviously is -- is not inconsequential.

There is a need to promote respect for the
law and to deter future conduct, and that is not
simply about you.  That's about the kind of community
as a large.  When the corporate America that works in
this space is looking at this case, they need to
understand that there'll be a consequence.  You bend
the rules, you don't follow 'em, and then it's going
to be more than just a slap on the wrist and you kind
of get to go on with your profits, and move forward.
There needs to be accountability.  And I think some
limitation on liberty is part of that in this case.  I
think that's -- that is warranted.  I think both
parties agree with that and so do I.  As part of that
accountability, there's significant forfeiture in this
case.  There'll be a significant fine as well which
will focus on those particular elements of this

1 factor.

2          This is not a case in which you need

3 rehabilitation services.  Most defendants that are

4 kind of standing in front of me or appearing in front

5 of me who committed a drug crime, are profoundly

6 addicted, they don't have job skills, they, you know,

7 desperately need resources in order to be able to put

8 their life together.  And you're blessed not to be in

9 that position, Mr. Delk.  That's not your story.

10 That's not why you're here.  It's not the kind of

11 crime that you've committed.

12          This isn't a crime in which we need to

13 incarcerate you because of a dangerous criminal

14 history and it's the only way we can prevent future

15 crimes from being committed.  That doesn't apply in

16 this particular case, but it's one of the factors that

17 I'm required to consider.

18          Ultimately, there has to be a just

19 punishment.  And I know you're remorseful; you regret

20 this.  And I know I won't see you again.  I think it

21 would be highly unlikely that I'll see you again in

22 this courtroom.

23          But you owe society a debt, more than just

24 paying the money back, more than, you know, just

25 losing the interest in this business, you owe society

1  kind of a broader debt here for having engaged in

2  conduct that just harms us generally.  That's the

3  punitive part of that.  And I'll fashion what I think

4  is a just punishment in this case to address that

5  particular factor.

6       I began with the remarks that I referenced

7  because I really want you to understand that despite

8  all the math in federal sentencing, judges take a lot

9  of time to think about the individual circumstances in

10 a person that comes before me.  And in fact, that's a

11 factor that I'm required to consider.  I'm supposed to

12 look at the nature and circumstances of the conduct

13 here, as well as your history and characteristics.

14 And there's much that's mitigating about that.

15      I mean, I think you, on a personal level,

16 have built a business that has provided good jobs for

17 people who need them, and you've obviously been

18 successful in many legal ways in this particular

19 business interest.

20      You don't present as somebody who brings, you

21 know, a past criminal conduct.  I've often thought

22 what my criminal conduct would look like if it was

23 part of the PSR.  It'd be pretty close to yours, to be

24 honest, probably not quite the number of speeding

25 tickets, but I don't have a car that is as fast as

1  yours either.  So -- but, you know, it's this

2  recognition, this commitment to your family and your

3  children that, you know, you're not a person that

4  wants to live like this.  That's not what you want to

5  do.

6          It's hard for us as parents when we fail with

7  our kids, right?  That's a hard thing.  You're going

8  to have to explain this at some point and some day,

9  and that's -- that's a really difficult thing because

10 as parents, we want to be role models by succeeding,

11 right?  That's what we want.  We want to say, Look at

12 this successful thing I've done.  I hope you'll grow

13 up and you'll be able to do this as well.  It's a lot

14 harder for us when we've failed.  But here's what I

15 know:  We all do.  Every one of us.  And you've got

16 this opportunity to do something really, really

17 important, Mr. Delk.  You've got this opportunity to

18 demonstrate to these young children at some point what

19 a person of character and integrity does when they

20 fail.  That's a big, big deal because they're going to

21 fail.  At some point they're going to make decisions

22 and mistakes that they wish they could take back.  And

23 it's a real important part of the maturation process

24 to come to terms with how you live your life when you

25 disappoint the people you love, when you make

1  decisions that are out of character or decisions that
2  debase your character in the way that the decisions
3  that you've made have done that.  And I challenge you
4  to do that going forward.  And you're going to have to
5  grieve this because there are consequences that come
6  with this.  But there's a lot of good that can come
7  out of this point in your life, kind of this mid-point
8  in your life in terms of taking stock and moving
9  forward and making some different choices going
10 forward.

11         I've considered the different options that I
12 have in front of me.  Probation obviously's an option
13 in this case.  I do think it's appropriate in this
14 case.

15         You should not get a harsher sentence or a
16 more lenient sentence because you're in my courtroom,
17 and I'm going to sentence you to what is considered a
18 guideline sentence in this case, so I've addressed
19 that.

20         And then there's the issue of restitution,
21 which is not applicable in this case because of the
22 other financial arrangements that have been made.

23         Now those are all the factors that I've
24 considered, and so I'm going to articulate the
25 sentence as it relates to Mr. Delk.

1          If there's no legal objections, counsel, to

2   the sentence that I impose, or the process that we've

3   used here this morning, it's going to be imposed as

4   follows.

5          Would you stand, please.

6          Pursuant to the Sentencing Reform Act of

7   1984, as modified by the subsequent case law, I do

8   find that the following sentence is sufficient, but

9   not greater than necessary to comply with the purposes

10  of 18 United States Code, Section 3553(a).

11          Accordingly, it's the judgment of the Court

12  that the defendant Jeremy Delk is hereby placed on

13  probation for a period of three years.

14          You must immediately report to the United

15  States Probation Office located in the Community Trust

16  Building, 100 East Vine Street, Suite 600 here in

17  Lexington following the conclusion of this hearing.

18          While on probation, you must not commit

19  another federal, state, or local crime.

20          You must comply with the mandatory and

21  standard conditions that are set forth in the judgment

22  and commitment order that have been adopted by the

23  Court.

24          And you must comply with the following

25  additional conditions:

1          You must not possess a firearm, destructive
2  device, ammunition, or dangerous weapon.
3          And you must refrain from any unlawful use of
4  a controlled substance.
5          And you'll be required to submit to one drug
6  test within 15 days of release from imprisonment, and
7  at least two periodic drug tests thereafter.
8          In addition, you must comply with the
9  following special conditions as adopted by the Court:
10         You will be placed on home detention for a
11 period of four months to commence within 30 days.
12         During this time, you must remain at your
13 place of residence, except for employment and other
14 activities approved in advance by the probation
15 officer.
16         And you must be monitored by a form of
17 location monitoring at the discretion of the probation
18 officer, and pay the costs of the program.
19         You must also complete 100 hours of community
20 service as approved and directed by the probation
21 officer.
22         You must also provide the probation officer
23 with written proof of the number of hours completed.
24         You must abstain from the excessive use of
25 alcohol.

1          You must not purchase, possess, use,

2    distribute, or administer any controlled substance or

3    paraphernalia related to controlled substances, except

4    as prescribed by a physician, and must not frequent

5    places where controlled substances are illegally sold,

6    used, distributed, or administered.

7          And you must provide the probation officer

8    with access to any requested financial information.

9          You further must not incur new credit charges

10   or open additional lines of credit without the

11   approval of the probation officer, unless you're in

12   compliance with any installment payment schedule

13   that's in place.  Or that particular condition won't

14   be imposed at the time that you -- after which you pay

15   the fine in this particular case.

16         So once you've paid the fine, there'll no

17   need for that reporting condition.  But until that

18   happens, you'll have to abide by that particular

19   reporting condition.

20         You must immediately report your interest,

21   either directly or indirectly, in any new business or

22   corporation, or the registering of a business or

23   corporation to your probation officer.  It doesn't

24   prevent you from engaging in a new business interest.

25   It's about the importance of communicating that

1   information to the probation officer so that they can
2   have a full picture of your general compliance with
3   these rules.
4          And then you must refrain from engaging in an
5   occupation, business, or profession involving the
6   distribution of prescription drugs either directly or
7   indirectly without the approval of the probation
8   officer.
9          And then finally, we'll incorporate by
10  reference the reporting requirement as it relates to
11  your travel.
12         So your travel won't be restricted, but
13  you'll have to report to the probation officer prior
14  to your travel.  So it will be important to give the
15  probation office an opportunity to review it, make
16  sure it seems to be appropriate, or raise any concerns
17  with the Court, if necessary.
18         Based on your financial situation, I am going
19  to impose a fine at the top end of the guidelines of
20  $20,000 in this matter, and then you'll be required to
21  pay to the United States a special assessment of $100,
22  which is due immediately.
23         Counsel, let me see if there's any legal
24  objection to the sentence I've articulated or the
25  process we've used to impose that sentence.

1          MS. SMITH:  No objections, Your Honor.

2          THE COURT:  Okay.

3          MR. BRAMMELL:  No objection, Your Honor.

4          THE COURT:  All right.  Well, I'm going to

5   order that that sentence be imposed as I have stated.

6          I'm required to notify you in writing of any

7   appeal rights that you may have.  So we're going to

8   have that written notice directed to you.  And you can

9   review that with your lawyer.  It's just a notice.

10  We'll make sure you have a copy for your own records,

11  and then we'll file a copy in the court record.  So

12  let's have that delivered to the defendant.

13         Mr. Delk, you can be seated, kind of look

14  over that, and talk to your lawyer about that as

15  necessary.

16         And then while that's occurring,

17  Mr. Marshall, is there anything else you need to say

18  on behalf of the corporate defendant here?

19         MR. MARSHALL:  No, Your Honor.

20         THE COURT:  Okay.

21         MR. MARSHALL:  Other than to point out how

22  strange it seems to stand here to be sentenced.

23         THE COURT:  Nobody wants to be in that

24  position, right?

25         MR. MARSHALL:  No, sir, never.

```
 1              THE COURT:  All right.

 2              Now, the defendant Mr. Delk has signed the

 3     notice of appeal rights.  We'll file that in the

 4     record.  He's kept one for his records.  We'll further

 5     order a judgment of the conviction will be prepared

 6     and entered in the record as well.

 7              Well, sentencing corporations is kind a

 8     unique practice in federal court.  Corporations can be

 9     culpable as well as individuals, so can be held

10     accountable.  And the consequence for a corporation is

11     often an economic consequence for the corporation.

12     It's oftentimes a consequence as it relates to

13     monitoring and supervision, the period of time as it

14     relates to making sure that there's no further

15     criminal activity that takes place.  There, of course,

16     is no recommended period of incarceration or no

17     guidelines to consider in this particular case, other

18     than the statutory provisions, which provides for up

19     to five years of probation as it relates to the

20     corporation.

21              The maximum fine in the corporation context

22     in this sense is the $1,000.  And this isn't a

23     restitution case, although there is a special

24     assessment as well of $125 in this particular matter.

25              The traditional factors don't fit neatly
```

1  because they typically, under 3553(a), are focused on

2  individuals in terms of their history and

3  characteristics and the need for treatment and -- but

4  some of the factors do apply.  You know, like how

5  serious this crime is.  The corporation needs to have

6  some accountability from a corporate standpoint.

7  There needs to be a sense in the economic community

8  that there are consequences where corporations are

9  engaged in this kind of conduct, so those certainly

10 apply in this particular case.

11         Ultimately, I think you're correct in terms

12 of your argument, and I think the government agrees in

13 terms of kind of the options that the Court has here.

14 We'll impose the maximum fine that will be imposed.

15 I'm going to impose a period of probation as well, and

16 it will be a relatively short period of probation, and

17 I think we'll just kind of let it self-function.  I'm

18 not sure I'm comfortable putting any kind of

19 limitations.  We hope this sale goes through, but

20 sometimes it takes longer than we think, or sometimes

21 things come up at the last minute, and so we'll have a

22 period -- a chunk of time in which we can continue to

23 supervise this corporate entity, if needed.

24         So I'll articulate this sentence, and then if

25 there's no objection to the actual sentence or the

1  process, it will be imposed as follows:

2        Pursuant to the Sentencing Reform Act of

3  1984, as modified by the subsequent case law, the

4  Court finds that the following sentence is sufficient,

5  but not greater than necessary, to comply with the

6  purposes of 18 United States Code, Section 3553(a).

7        Accordingly, it's the judgment of the Court

8  that the defendant Tailor Made Compounding, LLC is

9  hereby sentenced to a term of probation of three

10 years, and it could ultimately be terminated on the

11 sale of the assets.  But rather than do that, we'll

12 just kind of let it exist out there and -- then just

13 to make sure that we have some monitoring that can

14 take place.

15       While on probation, of course, the defendant

16 organization shall not commit another federal, state,

17 or local crime, and then the defendant shall also

18 abide by the following special conditions:

19       It must comply with all regulations as set

20 forth in the federal Food, Drug, and Cosmetic Act of

21 21 United States Code, Section 301.

22       Based on the financial situation of the

23 corporation, I'll impose a $1,000 fine in this matter.

24       The corporation will be required to pay to

25 the United States also a special assessment of $125,

1  which is due immediately.

2          And as noted already on the record, the

3  defendant will forfeit to the United States all

4  interest in the property listed in the forfeiture

5  allegation of the information, specifically a money

6  judgment in the amount of $1,788,906.82.

7          Counsel, any objection to that sentence or

8  the process we've used here today?

9          MS. SMITH:  No, Your Honor.

10          MR. MARSHALL:  No, Your Honor.  Thank you.

11          THE COURT:  All right.  You can be seated.

12          We'll notify you in writing as the corporate

13  representative of any appeal rights that the

14  corporation may have, so we'll have that document

15  tendered to Mr. Marshall.  Take a moment and sign one

16  of those, sir.

17          MR. MARSHALL:  Yes, sir.

18          THE COURT:  And we'll file that in the

19  record.

20          The corporate defendant has signed the notice

21  of appeal rights, which we'll file in the record in

22  this case, and order a judgment of the conviction be

23  prepared for the corporate defendant as well.

24          Mr. Delk, have you understood these

25  proceedings?

1          THE DEFENDANT:  Yes, Your Honor.

2          THE COURT:  Any questions about what's

3  occurred here today?

4          THE DEFENDANT:  No.

5          THE COURT:  Okay.  Well, good luck to you,

6  sir.

7          Any other matters I need to address for the

8  United States?

9          MS. SMITH:  No, Your Honor.  Thank you.

10          THE COURT:  Okay.  Anything for either the

11  defendants, Mr. Brammell?

12          MR. BRAMMELL:  No, Your Honor.

13          THE COURT:  Mr. Marshall?

14          MR. MARSHALL:  Thank you, Your Honor.

15          THE COURT:  All right.  Thank you all for

16  your representation.

17          We'll stand in recess, pending the next item

18  on my docket.

19          [PROCEEDINGS ADJOURNED AT 12:08 p.m.]

20                    *  *  *  *  *

21          I, SANDRA L. WILDER, RMR, CRR, certify that

22  the foregoing is a correct transcript from the record

23  of proceedings in the above-entitled matter.

24  /s/ Sandra L. Wilder RMR, CRR     Date of Certification:
    Official Court Reporter                April 8, 2021
25